H. E. DUFF, Appellant,

v.

W. P. MATTHEWS et al., Appellees.

No. 10453.

Court of Civil Appeals of Texas.
Austin.

March 13, 1957.

Rehearing Denied April 10, 1957.

Julian C. Clopton, Austin, for appellant.

Calvin Jayroe, Cofer & Cofer, Austin, for appellees.

GRAY, Justice.

Appellees, W. P. Matthews and Paul H. Pfeifer, sued appellant, H. E. Duff, to establish a road or passway over appellant's land. They sought to establish the road by prescription and, in the alternative, by necessity. They also sued for damages.

Appellant answered by a general denial, pleas of limitation of three and five years, and as against appellee Matthews a general

warranty of title, and, in the alternative, and by way of cross action in the event such way or road be established across his land he sued for damages.

Appellant and appellees own lots in the Bruton Springs Subdivision in Travis County. The following sketch will sufficiently identify the lots for the purpose of this opinion:

Appellant owns the northwest portion of lot 6 which is marked on the sketch and labeled "Duff." Appellee Pfeifer owns lots 2 and 3 and appellee Matthews owns the west one half of lot 5 and the south portion of lot 6 together with a strip of land ten feet wide along the east line of appellant's tract and extending to Lake Austin, the same being a part of lot 6.

Bruton Springs Subdivision was platted by J. F. Clark about the year 1912, and the plat was duly filed for record in the deed records of Travis County. This plat shows a "Road Reserved for Public." It extends from lot 1 to lot 17 and is shown on the attached sketch.

Also shown on the plat and the sketch is a road entering the subdivision from the Bruton Springs area and extending to lot 18. At the time the subdivision was platted J. F. Clark owned the land within and surrounding it to the river or lake front.

By mesne conveyances the lots have been conveyed by their description contained in the plat. Thus each grantor conveyed whatever was necessary for the enjoyment of the lot conveyed and retained whatever was necessary for the use of the land, if any, retained. Texas & N. O. R. Co. v. Millard, Tex.Civ.App., 181 S.W.2d 842, no writ history.

A steep bluff or hill extends across the lots between the above mentioned reserved road and the lake front and across the south portion of appellant's tract. This bluff or hill is not shown on the sketch but it appears that it extends to the lake front east of lot 1.

Appellant acquired his tract from appellee Matthews by general warranty deed dated January 21, 1950, since which time he has built a house between the bluff and the lake and has made other improvements on the land. However none of the parties permanently reside on their land.

There is an area designated on the plat as "Bruton Springs Park Reserve" and which lies generally west of lot 21 and extends to the lake front. This area was reserved for the common use of all purchasers of lots in the subdivision.

J. F. Clark testified that at the time the subdivision was platted, and afterwards, that in going to and from the lake front portions of the several lots he entered the subdivision from the Bruton Springs area and traveled east between the bluff and

lake front. Various witnesses testified to the use of this way and it appears that appellees used it. There is dispute as to the actual condition of this way but there is evidence that it has to some extent at least been improved and extends to the west line of lot 3. The way or road extended across appellant's lot and between his house and the lake. It was used, with disputes, until Thanksgiving Day, 1953, when appellant closed it prior to which time however he had placed obstructions in the road.

This suit was filed July 5, 1955.

A jury trial was had and eighteen special issues were submitted some of which (3, 4, 5, 7, 8, 9 and 11) were not answered, because the answers to preceding issues rendered their answers unnecessary. The jury found: (1) that a road had existed from Bruton Springs across appellant's property for a period of ten or more years immediately prior to the time appellant closed it; (2) the public generally had not used the road along the route and across appellant's tract for ten or more years immediately prior to the time appellant closed it; (6) that appellee Pfeifer and his predecessors in title did not use the road across appellant's tract continuously and uninterrupted for ten or more years immediately prior to the time appellant closed it; (10) that the road across appellant's tract was not dedicated as a public road before appellant acquired it; (12) that when Matthews conveyed the tract to Duff the road across the property was "continuous, obvious, apparent and necessary"; (13) that in July, 1914, when J. F. Clark conveyed to C. M. Miller (lot 6 and part of lot 5) the road across the property was "continuous, obvious, apparent and necessary"; (14, 15, 16 and 17) that the parties had not suffered damages; and (18) that appellant had held peaceable and adverse possession of the roadway in controversy under title or color of title for three years prior to July 5, 1955.

The trial court rendered judgment disregarding the jury's answers to issues 2, 6, 10, 14, 15, 16, 17 and 18 and the failure

of the jury to answer issues 3, 4, 5, 7, 8, 9 and 11 and established an easement of necessity across appellant's property at a location different from the claimed road.

■ It is well established that a way of necessity must be more than one of convenience and if the owner of land has or can use another way then he does not have a way of necessity over another's land. Alley v. Carleton, 29 Tex. 74; Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622; Bains v. Parker, 143 Tex. 57, 182 S.W.2d 397.

In Parker v. Bains, Tex.Civ.App., 194 S.W.2d 569, at page 576, er. ref., n. r. e., the Court said:

"There has been a gradual enlargement by the courts of the doctrine of implied reservation of right of way by necessity. At first it applied only to a right of way over the grantor's land. It was then extended in favor of the grantor over his grantee's land, under the same circumstances. Then the doctrine of strict necessity was watered down to reasonable necessity, but to be applied with great caution. Scarborough v. Anderson Bros. Const. Co., supra [Tex.Civ.App., 90 S.W.2d 305], and authorities there cited."

and see: 15 Tex.Jur., Sec. 18, p. 787.

In 1914, J. C. Clark sold all of lot 6 and part of lot 5 to C. M. Miller which sale left Clark as the owner of the other lots in the subdivision. We note that in 1914 Clark owned lots 1, 2, 3, 4, 5 and 6 until he sold lot 6 and part of lot 5 to Miller. On January 21, 1950, appellee Matthews owned all of lot 6 and the river front portion of lot 5. Conceding that prior to January 21, 1950, appellee Matthews did not have a way of necessity over his own land a different situation existed after the sale to appellant. 15 Tex.Jur., Sec. 16, p. 784.

In Othen v. Rosier, supra [148 Tex. 485, 226 S.W.2d 625], the Court said:

"* * * that before an easement can be held to be created by implied reservation it must be shown: (1) that there was a unity of ownership of the alleged dominant and servient estates; (2) that the roadway is a necessity, not a mere convenience; and (3) that the necessity existed at the time of severance of the two estates."

What we have already said is sufficient to show unity of ownership of the dominant and servient estates. The question of the necessity of the way will be later noticed but here we will assume it exists. Then at the time of the sale by Clark to Miller in 1914, Clark was entitled to the way from his lots 1, 2, 3 and 4 across Miller's land and also Miller had the way across Clark's other lands. Appellee Pfeifer now owns lots 2 and 3. Also in 1950 when appellee Matthews conveyed the northwest portion of lot 6 to appellant he was left with the east portion of lot 5 and the ten foot strip of lot 6 along the east side of appellant's land. The hill or bluff extends across the lots from west to east and appellees are entitled to a way of necessity over appellant's tract unless they have a way up the hill or bluff or by water over Lake Austin and around appellant's tract.

■ We have not found any Texas case dealing with streams, cliffs and hills. However these obstructions are noticed by the Supreme Court of Missouri in Wiese v. Thien, 279 Mo. 524, 214 S.W. 853, 5 A.L.R. 1552, and the annotations following that opinion in 5 A.L.R., page 1557 et seq.

The testimony of the witnesses relating to the hill or bluff shows it is very steep and that it would be practically impossible to go over it in any kind of vehicle. Its height is estimated to be from 300 to 400 feet. Appellee Matthews testified:

"* * * They could put cogs on the road and get up there, and that is about the only way.

"Q. Cogs?

"A. Yes, put a track and cogs there to go up there, but you couldn't go up there with a four-wheel drive vehicle. I would say they couldn't pull it, no matter what kind of a grading they might do. That is straight up. You would have to put the road on a sloping order on a number of those lots. They couldn't just get on one lot and go right straight up, even with a four-wheel drive vehicle, even if they graded it with a bull dozer, they couldn't go up it. It would be that steep."

Appellee Pfeifer testified:

"No vehicle could go up and down the incline after you pass the curve in Bruton Springs and pass that curvature road which wraps itself around Lot *61*, as I recall it over there, there is no point where any vehicle which I have knowledge of by the aid of another vehicle and a cable could make it either up or down that incline, regardless of the type of vehicle that you might wish to describe."

J. F. Clark testified that in 1914 when he sold lot 6 and part of lot 5 to Miller it was necessary for him to cross lots 5 and 6 and other lots to get to the lake front portions of lots 2 and 3. One witness said the cliff could be cut down with a bulldozer and appellant said "they could build a road there."

It is apparent that the witnesses agree that it would be impossible to get up and down the bluff without a road being built, that it would be difficult to build such a road which would require at least a bulldozer (and the attending expense) and that without the road the lake front portions of appellees' lots are not accessible by vehicles.

■ It is our opinion that the evidence is sufficient to show more than that it would be difficult and expensive for appellees to acquire another way to their lots, that the way prayed for is more than a mere convenience, that without the way prayed for appellees will be deprived of the reasonable and contemplated use of their lots, and that the way is a necessity.

■ Appellant objected to the submission of issues 12 and 13 for the reason that those issues are multifarious and duplicitous.

As stated supra appellees' pleading sought to establish a road over appellant's land first by prescription and, in the alternative, by necessity. Issues 1, 2, 6 and 10 supra related to the alleged prescriptive use of the way. Issues 12 and 13 are the only issues using the word "necessary" and clearly were submitted issues relating to the alternative pleading. The ultimate fact called for by this pleading was the necessity for the way. The fact that the issue submitted the factual elements of continuous, obvious and apparent with the ultimate factual element of necessity made the issue more onerous than required. However this imposed a greater burden on appellees and could not harm appellant.

"The rule is well established that an issue is not to be condemned as multifarious or duplicitous merely because it groups more than one fact element therein, so long as it involves only one ultimate or controlling issue as was the case in both of these issues. Austin v. De George, Tex.Civ.App., 55 S.W.2d 585, writ refused; Service Mut. Ins. Co. of Texas v. Territo, Tex.Civ.App., 147 S.W.2d 846; Rainwater v. McGrew, Tex.Civ.App., 181 S.W.2d 103." Gray County Gas Co. v. Oldham, Tex.Civ.App., 238 S.W.2d 596, 598. No writ history.

■ Appellant says the trial court erred in refusing to declare a mistrial because appellees "injected evidence concerning insurance into the trial." This matter came about when appellee Matthews was testifying. He was asked by his attorney and testified as follows:

"Q. Did you furnish Mr. Duff an abstract at the time that he told you that we wanted to buy this piece of

property prior to the closing of your transaction?

"A. I furnished his attorney with an abstract for examination purposes, and gave him a guaranty title to the property, and I got my abstract back."

No objection was made to the evidence at the time; however, later and in the jury's absence appellant moved for a mistrial and that the jury be discharged. This motion was denied and counsel were admonished not to mention insurance. At a subsequent time during the trial while the witness E. H. Smart was testifying and was being interrogated as to who he represented at the time a deposition was taken, he was asked by appellees' counsel and answered as follows:

"You do represent the party who guaranteed the title on the property to Duff now?

"A. That is correct."

Appellant objected, moved that a mistrial be declared and the jury discharged. The objection was overruled and the motion denied.

No complaint is made of the failure of the jury to find that any party had suffered damages. Then the question arises: Did the complained of error amount to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case? Rule 434, Texas Rules of Civil Procedure.

The burden was upon appellant to show from the record as a whole that the complained of error was such that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860.

Appellant relies on the general rule that the voluntary injection into the case that one or the other party is protected by insurance is inherently harmful and results in an improper judgment. Appellant does not argue, and the record does not suggest, that the complained of evidence indicated to the jury that either of the parties had insurance to protect the liability for which he was sued and certainly not that liability established against appellant by the judgment complained of. Then the evidence was not material to any issue in the case and hence caused no harm.

The trial court disregarded the jury's answer to issue 18 and appellant assigns the action as error.

The judgment complained of established "an easement of necessity across defendant's property." Then by the judgment appellees' right to cross appellant's tract exists by reason of necessity and not by prescription. This necessity did not arise while appellees had another way, that is not until appellant denied them passage over the usual way. Until that time the necessity did not arise, its use (necessity) was not adverse and it would be presumed to continue until the necessity ceased to exist. Sassman v. Collins, 53 Tex.Civ.App. 71, 115 S.W. 337. Er. ref.; Alley v. Carleton, supra.

It is not necessary for us to here, and we do not, express any opinion as to whether the three years statute of limitation would be a bar to appellees' alleged way by prescription. That question is not before us, however the jury's answer to issue 18 (that appellant had "held peaceable and adverse possession of the claimed roadway in controversy under title or color of title for three years prior to July 5, 1955") is urged as a bar to appellees' way of necessity.

In Finn v. Williams, 376 Ill. 95, 33 N.E.2d 226, 228, 133 A.L.R. 1390, the Court said:

"A right of way easement of necessity was necessarily implied in the conveyance severing the two tracts in 1895, and passed by mesne conveyances to plaintiffs in 1937. The fact that the original grantee and his successors in interest have been permitted ingress to and egress from the 40 acres

over the land owned by surrounding strangers is immaterial. When such permission is denied, as in the present case, the subsequent grantees may avail themselves of the dormant easement implied in the deed severing the dominant and servient estates."

Also see: Othen v. Rosier, supra.

We have not been cited to any case applying the three year statute, Vernon's Ann.Civ.St. art. 5507, to easements and we have not found any. We are aware of the holding of our Supreme Court that the five year statute, Vernon's Ann.Civ.St. art. 5509, may be a bar to an easement by deed. City of Galveston v. Williams, 69 Tex. 449, 6 S.W. 860, and also the holdings of several Courts of Civil Appeals citing that opinion. However the three year statute was not involved in any of those opinions and only one, Chenowth Bros. v. Magnolia Petroleum Company, Tex.Civ.App., 129 S.W.2d 446, er. dism. judgm. cor., cited by appellant applies it (five years statute) to a way of necessity. However the holding in that case is that the way was barred by the five and the ten years statutes, Vernon's Ann.Civ.St. arts. 5509, 5510. In the court's statement of the case it said:

"Although plaintiffs alleged an implied easement over the lands in question under the 'ways of necessity' doctrine, they present no proposition on that theory; hence, it will not be given further notice. They seem to have chiefly relied for recovery on a dedicatory deed to the City of Dallas, * * *."

However the court held:

"The right to an implied easement over the lands in question, if any such ever existed in favor of plaintiffs' predecessors in title, under the 'ways of necessity' doctrine, or under any other theory, in our opinion, was shown by the facts to have been barred under the five and ten years' statutes of limitation prior to the institution of the suit."

The quoted statements perhaps may explain the Supreme Court's announcement that the judgment was correct.

The above decisions under the five years statute are not controlling here for the reason that different essential elements are required to perfect a title by limitation under the three and the five years statutes. Otherwise there would be neither justification nor necessity for the statutes fixing different times under which adverse possession of land may ripen into title.

The authorities cited in this opinion clearly hold that when a grantor conveys land which is surrounded by his own land, or by his and that of third persons, there is an implied reservation of a way of necessity over the land conveyed where the grantor has no other way of access to or egress from his land. Such implied reservation in favor of appellees is shown by the record before us and appellant took his deed subject to this implied reservation.

When appellant closed appellees' way to and from their land then the temporary right of a way of necessity arose "from the exigencies of the case and ceases when the necessity terminates." Bains v. Parker, supra [143 Tex. 57, 182 S.W.2d 399].

In Burnham v. Hardy Oil Co., 108 Tex. 555, 564, 195 S.W. 1139, 1142, the court considered the three years statute of limitation and as to the meaning of the record "title" as used in the statute, Art. 5508, said:

"* * * its definition in the statute as, 'a regular chain of transfer from or under the sovereignty of the soil.'

"This means, in a word, that the claimant, by a regular chain of transfer of itself effectual for that purpose, must possess the purported title originally conferred by the sovereign's grant, the source of the claimant's right. It is not necessary that he hold whatever better right may lie back of the grant. Nor is it essential that any conveyance in the chain subsequent to the grant

bestow a higher right than does the grant. The title must simply flow unbrokenly from its source. It is not required at any stage to rise above its source, but it must maintain throughout its succession all of the elements of its source. To have this character and effect, the chain of transfer must therefore be such as, in itself, will invest the claimant with the right originally acquired in virtue of the grant. * * *

"With the right, in its inception, afforded the protection of the statute only because of the power of the sovereign to confer it, there must continue in those whose successive transfers constitute the chain of title, the power to convey it. Such power is necessary to effectually transfer the title; unless it exists, the title does not connect by unbroken chain with the grant.

"The statute does not recognize as 'title' any mere apparent right to the land granted. While it has reference only to the title originally evidenced by the grant, and disregards all other title, at no stage does it deal with any apparent right under that title, or with any right less than the actual 'interest' or 'estate' created by the grant. The claimant's title must connect with the grant. It does not connect with the grant, unless he holds the right vested by the grant. He does not hold such right, unless he has acquired, to the extent that the grant conferred it, the real and beneficial interest in the land. He acquires that interest, if the chain of transfer is sufficient in itself to invest him with it. But the chain of transfer is not sufficient in itself for that purpose, if any grantor in the chain is without the legal power to convey what his deed purports to convey.

"These propositions are in our opinion self-evident. They are established in the decisions of the court, and are not open to challenge. * * *

"A limitation claimant is not entitled to the protection which is accorded to an innocent purchaser. He derives no aid from equity, nor is he dependent upon any of its doctrines. The statute, alone, is the measure of his right, and meeting its requirements alone entitles him to its protection. 'Title,' as used in this statute, does not mean the title which equity may in a proper case bestow. It refers to a title held by legal right as evidenced by a regular chain of transfer from the sovereignty of the soil. For illustration, the claimant's rights are not prejudiced by actual knowledge of the existence of the superior right. By the same rule, they are not bettered by his want of knowledge of its existence. No equitable considerations can make them superior to what they would be without the presence of such considerations. His title is simply such as the chain of transfer, tested by itself, unaided by any equity and unimpaired by any equity, confers. It is not defeated by the rights of others which lie outside of it. Neither is it supported by any rights in favor of the claimant which lie equally without it. Its strength, as well as its weakness, is only that of the chain of transfer which constitutes it."

Testing appellant's title by the language quoted we find that: title to all of the land in question was in 1912 vested in the subdivider Clark; through and from him by mesne conveyances title to the tracts involved has vested in the respective parties here, and the bluff or hill giving rise to the way of necessity has at all times extended across the several lots. Then unity of the ownership of the dominant and servient estates is shown. When Clark sold to Miller in 1914, he retained lots 1, 2, 3, and 4 and, if he had no other way of ingress and egress there was an implied reservation of a way by necessity over the land conveyed to Miller and Miller's land was charged with this burden in the hands of any vendee under the conveyance. Othen v. Rosier, supra. The same announcement is applica-

ble to the conveyance to appellant by appellee Matthews in 1950. Then appellant's title is burdened with an implied reservation of a way by necessity in favor of Pfeifer because he (appellant) is a vendee subsequent to Miller and the same is true as to Matthews and to appellant as a vendee of Matthews.

Testing appellant's title by "the chains of transfer which constitute it" his claim under the three years statute must fail because the grantors in the chain of transfers were without the legal power to convey the implied way by necessity existing in favor of other vendees.

"He acquires that interest, if the chain of transfer is sufficient in itself to invest him with it. But the chain of transfer is not sufficient in itself for that purpose, if any grantor in the chain is without the legal power to convey what his deed purports to convey." Burnham v. Hardy Oil Co., supra.

The chain of transfers in appellant's title brings him clearly within the holding in Burnham v. Hardy Oil Co., supra, and in any event there is no escape from it as to appellee Pfeifer. Moreover prior to or at the time appellant purchased the land from Matthews he was personally on the land and inspected it with a view of making the purchase. The physical facts as we have related them were in existence and were sufficient to charge him with notice of the existence of a way by necessity across the tract and further evidenced the implied reservations of the conveyances constituting his chain of title. See 55 Am.Jur., Sec. 732, p. 1100.

The judgment in this cause is dated April 10, 1956. Appellant's motion for new trial was filed April 19, 1956, and his amended motion for new trial was filed May 17, 1956. Appellant's points 15 and 16 were presented in his amended motion for new trial which was filed more than twenty days after filing the original and

for which reason they cannot be considered. Rule 329–b, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.