RODMAN SUPPLY COMPANY, Appellant,

v.

H. F. PARKER, Appellee.

No. 5543.

Court of Civil Appeals of Texas.

El Paso.

Nov. 14, 1962.

Rehearing Denied Dec. 19, 1962.

William W. Blanton, Odessa, for appellant.

S. M. Swearingen, McCamey, for appellee.

CLAYTON, Justice.

Appellee H. F. Parker filed suit against appellant Rodman Supply Company, a corporation, charging the latter with the willful, malicious and fraudulent conversion on January 2, 1958 of a quantity of well casing which appellee alleged he owned and of

which he was entitled to immediate and exclusive possession, which casing had been left by appellee with one Bewick Trucking Company for safekeeping. Suit was for the actual value of the casing and punitive damages. Upon findings of the jury on special issues, appellee was granted judgment for the value of the casing and $500.00 punitive damages.

Appellee was a drilling contractor and was engaged in drilling a well for one E. B. Hickman. During the drilling operations, in May of 1957 (probably May 8, 1957), Hickman had acquired the casing from appellant corporation which shipped it to the well site at Big Lake. On May 9, 1957 Hickman executed to appellee what purported to be a mechanic's and materialman's lien on the casing. This instrument recited that under the terms of the drilling contract between these parties Hickman was to place in escrow $12,000.00 to guarantee payment to appellee for such drilling, but which deposit in escrow had not been made; that "to induce Mortgagee to proceed with the drilling of such well prior to the placing of such sum in escrow and to assure Mortgagee that he will be paid for such drilling" Hickman agreed to make the escrow deposit on or before thirty days from the date of the instrument and "that failure to do so, shall, at the option of the Mortgagee, make this mechanic's lien subject to foreclosure." The escrow deposit was never made.

Appellee testified that after the execution of this instrument Hickman "had disappeared and been gone better than thirty days and I had tried several times at several different places to contact him." Under letter dated May 28, 1957, appellee wrote one W. N. or Bill Wright, the owner and operator of Bewick Trucking Company at Big Lake and requested the removal of the casing from the well site to the trucking company yard "for storage. Not to be moved out of your yard without a written order from me." The record reflects that Bewick took over the casing in response to this letter on June 10, 1957.

On June 19, 1957 appellee sent a registered letter to Hickman at his last known address notifying the latter that appellee had taken possession of the pipe. Later on that same day, however, appellee located Hickman at his home in Odessa and talked to him concerning the pipe. At that time Hickman turned over to appellee three "pipe delivery tally" sheets on Rodman Supply Company forms containing a description of the casing that had been delivered to Hickman. Appellee asserts that Hickman told appellee that the pipe was his (appellee's) but when asked for a bill of sale to the pipe Hickman replied, "You don't need one. You have the lien and that should be sufficient for you to take possession of (the pipe)." The following day, June 20th, Hickman wired appellee to plug the well. On the same day appellee filed for record the instrument granting the mechanic's and materialman's lien on the pipe and this instrument was recorded the following day, June 21, 1957. Actual notice of this instrument was given to Kenneth D. Hammans, manager of the pipe department of Rodman Supply Company, by appellee in the early part of August.

W. N. Wright of Bewick Trucking Company testified that on or about January 2, 1958 he received a telephone call from Hammans requesting that the pipe be turned over to that company. Knowing that there was some controversy as to the ownership of the pipe, Wright asked Hammans specifically if the pipe was Rodman's or if it belonged to appellee Parker. He was assured, Wright testified, that "the controversy had been settled, that an agreement had been reached with Mr. Parker and that the pipe belonged to Rodman Supply Company." On the basis of this assurance and a receipt for the pipe signed by Rodman's driver the pipe was released and loaded on Rodman's trucks that were sent for it.

Hammans' version of this conversation with Wright was that on December 4, 1957 he had received a letter from Hickman to the effect that the latter understood the

pipe was in the Bewick yard, the letter containing this paragraph:

"You have my complete authority to move the pipe back to your Odessa yard or do with it as you see fit under the circumstances. The pipe was wrongfully moved to the yard in the first place unless you all authorized it in the first instance as I did not. I did not know that it was moved there until sometime after someone told me someone moved it there."

This letter was prepared and signed in the presence of Hammans, Hickman and the latter's lawyer, and at a time when Hammans was trying to collect from Hickman for the pipe. After receiving the letter, Hammans called Wright on the telephone. As to that conversation, Hammans' testimony is as follows:

"Q. What did you tell Mr. Wright, sir?

"A. I called Mr. Wright and told him that I had gotten a letter and that we had gotten permission to pick that pipe up out of his yard at Big Lake.

"Q. Were you referring to this letter?

"A. The one from Hickman, right.

"Q. Did you go into details about the letter, with him?

"A. I don't remember. I don't think I did. I told him that I had this letter and that *we had gotten things straightened out* and was going to pick up the pipe. (Emphasis supplied.)

"Q. Did you tell him that you had gotten Mr. Parker's permission to do this?

"A. No, sir.

"Q. And Mr. Parker's lawyer's permission?

"A. No, sir."

Hammans further testified that he had shipped pipe before to Hickman "and he had come in the day or the next day following and paid for it, come back to the office to do that, and we went ahead and shipped it this time." Hammans knew where the well site to which the pipe was delivered was located. He contacted Hickman the latter part of June of 1957, and told Hickman he would have to pay for the pipe or make some kind of a deal to pay for it, or the pipe would have to be recovered. Hammans talked to Hickman again in August or September of 1957, and finally received from him the letter of December 4, 1957, on the basis of which appellant Rodman Supply took possession of the pipe.

Special Issue No. 1 as submitted to the jury inquired:

"Do you find from a preponderance of the evidence that the Plaintiff Parker was in possession of, or entitled to the possession of the 5½ inch casing in question on the 2nd. day of January, 1958?"

To which the jury answered, "We do."

Under Special Issue No. 2 the jury determined the value of the casing.

Under Special Issue No. 3 the jury found that the defendant Rodman Supply Company, in taking the casing, acted intentionally, willfully, maliciously and fraudulently, and that such act was one in wanton disregard of the rights of plaintiff; and by Special Issue No. 4 exemplary damages in the amount of $500.00 were awarded plaintiff. Judgment was entered on the verdict.

■ Appellant directs sixteen points of error against Special Issue No. 1, including Points of Error Nos. 1 through 13, and Nos. 21, 22 and 23. All of these points of error have been considered, but we deem it unnecessary to discuss them all. Point 2 sets out that Special Issue No. 1 presents a question of law in asking the jury whether Parker was entitled to possession of the casing on January 2, 1958. In connection

with the issue as submitted, the court defined the word "possession" as "the detention and control, or the manual or ideal custody of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name." If the inquiry to the jury as to appellee's being entitled to possession of the casing has the vice of being a question of law or if Special Issue No. 1 as submitted presents a mixed question of fact and law, in either of which events it would be subject to objection (41B, Tex.Jur. 500, Trial—Civil Cases, ¶ 404); (3 McDonald, Texas Civil Practice 1051, Jury Trial: Charge, ¶ 12.03), we feel that the definition of the word "possession", while perhaps somewhat unwieldy, cures any objection and renders the issue one of fact for the jury. Home Ins. Co. of New York v. Young, 97 S.W.2d 360, Syl. 10 (Tex.Civ.App., err. dism.).

■ Nor do we consider Special Issue No. 1 as being duplicitous. (3 McDonald, supra, ¶ 12.18) (Rule 277 Texas Rules of Civil Procedure).

"The rule is well established that an issue is not to be condemned as multifarious or duplicitous merely because it groups more than one fact element therein, so long as it involves only one ultimate or controlling issue * * *." Duff v. Matthews, 300 S.W.2d 679 (Tex.Civ.App., reversed on other grounds [158 Tex. 333, 311 S.W.2d 637]), citing Austin v. De George, 55 S.W.2d 585 (Tex.Civ.App., err. dism.) and other authorities.

After a careful review of the other points of error directed toward Special Issue No. 1 we find no error, and all such points are accordingly overruled.

■ Points of Error Nos. 14 through 18 are directed toward Special Issue No. 3 which inquired whether, in taking the pipe, the appellant acted intentionally, willfully,

maliciously and fraudulently, and in wanton disregard of appellee's rights, which issue was answered in the affirmative by the jury. Points 19 and 20 attack the award of punitive damages on the grounds that there was no evidence to show that appellee was entitled to such damages and that submitting such issue to the jury in Special Issue No. 4 submitted a question of law.

Appellant complains that the evidence does not show that one of appellant's agents acting under authority from appellant did something which would justify awarding punitive damages. Appellant was a corporation. Hammans, who recovered the pipe from the yard where it was being stored by appellee, was the manager of appellant's tubular or pipe department. In King v. McGuff, 149 Tex. 432, 234 S.W.2d 403, our Supreme Court held that:

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, * * *

"(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

"(d) the employer or a manager of the employer ratified or approved the act."

The action of the manager of appellant's pipe department in recovering the possession of the pipe from Bewick, appellee's bailee, justifies the award of punitive damages against appellant, if the other essential elements governing such damages are present. There can be no question but that Hammans acted intentionally and willfully in calling Bewick and securing possession of the casing. Furthermore, it can be said that there is present an element of malice and fraud in the statement by Hammans to Bewick that "we had gotten things straightened out" at a time when Hammans, in addition to constructive notice, knew from conversations with appellee that the latter was vigorously asserting a claim to the pipe and negotiations had been going on to "work out something" with regard to the pipe.

■ The question now arises: Did appellant, through its manager, Hammans, perform some act which was "in wanton disregard of appellee's rights?" Appellant had delivered the casing to Hickman, placing the latter in possession thereof. Appellant also delivered to Hickman the "pipe delivery tally" sheets covering the casing. Appellant had clothed Hickman with these indicia of ownership, and made no effort to recover the casing from the date of its delivery to Hickman on or about May 8, 1957 until possession was recovered through what we may term a misrepresentation on January 2, 1953. During these seven or eight months (in which the pipe remained unpaid for) appellant instituted no legal process to recover the pipe or to protect itself by following the lien procedure provided for in Articles 5473 et seq., Vernon's Ann.Civ. St. It is not shown that appellant even went upon the well site to which the pipe was delivered or gave any notice to appellee, the driller, that it did not consider Hickman the owner of the pipe, even though Hammans knew where the well site was located. Appellant, through Hammans, had constructive notice of appellee's lien on June 21, 1957, and actual notice from appellee in August, 1957; but it did nothing to protect its interest or legally contest the appellee's asserted lien on the casing. It is said in Sackenreuther v. Winston, 137 S.W.2d 93 (Tex.Civ.App., writ refused):

> "Our courts have uniformly held that where one of two persons, equally entitled to consideration, as far as their purposes are concerned, must suffer from the delinquency of a third, the loss more properly falls upon him, who, having readily at hand the means of protection, has failed to avail himself of them."

We feel that this language has peculiar applicability to the facts of the case at hand and pursuant thereto we overrule appellant's Points of Error Nos. 14 through 18.

■ In comment on Points of Error 19 and 20, we find ample evidence in the record to support the jury's finding in awarding the appellee exemplary damages. Nor do we feel that such an issue constitutes a question of law. Texas courts have long submitted such an issue to the jury. (26 Tex.Jur.2d 121, ¶ 136). The trial court defined "Exemplary Damages" as those which are allowed "as a punishment for the party responsible for a wrong and as an example for the good of the public." Similar language is employed in the jury charge in Knittel v. Schmidt, 16 Tex.Civ.App. 7, 40 S.W. 507 (writ refused). Points of Error 19 and 20 are overruled.

After a careful analysis of all of the appellant's points, no error is found, and the judgment of the trial court is affirmed.

## MOTION FOR REHEARING

In appellant's Motion for Rehearing complaint is made that the opinion of this court on Point of Error No. 2 in this cause is in direct conflict with the holding of the Court of Civil Appeals at Houston in the case of A. B. Lewis Co. v. Robinson, 339 S.W. 2d 731. Point of Error No. 2 sets out that the trial court's Special Issue No. 1 presents a question of law in asking the jury whether Parker was entitled to possession of the casing involved in this litigation on January 2, 1958. The Special Issue No. 1 complained of as submitted to the jury inquired:

> "Do you find from a preponderance of the evidence that the Plaintiff Parker was in possession of, or entitled to the possession of the 5½ inch casing in question on the 2nd day of January, 1958?"

to which the jury replied "We do". In connection with this special issue the court gave a definition of the word "possession". We held, on the authority of Home Ins. Co. of New York v. Young, 97 S.W.2d 360, Syl. 10 (Tex.Civ.App., err. dism.), that the definition of the word "possession" rendered the issue a fact issue for the jury, and cured any objection to said special issue.

In the A. B. Lewis Co. v. Robinson case, cited by appellant, the Houston Court of Civil Appeals held that "[t]he jury's finding to Special Issue No. 1, that on February 22, 1957 appellee was entitled to possession of the car, is not a finding of fact but of law, and should be disregarded". However, there is nothing to indicate from the opinion that the trial court defined the word "possession" or the term "entitled to possession", and we feel that such circumstance distinguishes the cited case from the case at hand.

Appellant's Motion for Rehearing is overruled.