NORTON REFRIGERATED EXPRESS, INC. and Ray Norton, Appellants,

v.

RITTER BROTHERS CO., INC., et al., Appellees.

No. 8435.

Court of Civil Appeals of Texas, Texarkana.

June 7, 1977.

Rehearing Denied July 5, 1977.

Victor Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellants.

Charles Morgan, Smith, Stroud, McClerkin, Conway & Dunn, Texarkana, Ark., for appellees.

CHADICK, Chief Justice.

This is a suit to recover compensatory and exemplary damages for the alleged conversion of a truckload shipment of citrus fruit—a common law trover action. Plaintiffs below and appellees here, Ritter Brothers Co., Inc., A. M. Gilardi & Sons, Inc. and W. R. Hackett Fruit Company, recovered judgment for $4,492.13 actual and $3,500.00 exemplary damages, together with costs, etc., in the trial court. The defendants below and appellants here, Norton Refrigerated Express, Inc. and Ray Norton, have perfected an appeal. Judgment of the trial court is affirmed.

It is acknowledged by all parties that the shipment in suit was not delivered; that it was sold by the express company for $3,400.00 and no accounting therefor made to the appellees. Also, it appears without question that Ray Norton is President of Norton Refrigerated Express, Inc. and so far as pertinent here was active in the management of its affairs. Other material facts will be detailed as discussion of the issues may require.

Appellants' first point of error is as follows:

"*POINT OF ERROR NO. 1*: THE TRIAL COURT ERRED IN SUBMITTING SPECIAL ISSUE NOS. 1, 2, and 3, OR ANY ONE OF THEM, TO THE JURY INSOFAR AS THEY RELATE TO APPELLANT, RAY NORTON, BECAUSE THERE IS NO EVIDENCE THAT APPELLANT, RAY NORTON, COMMITTED ANY TORT IN HIS INDIVIDUAL CAPACITY OR WAS LIABLE FOR ANY TORTIOUS CONDUCT IN HIS INDIVIDUAL CAPACITY."

The special issues referred to in the point and the jury's answer thereto are as follows:

"SPECIAL ISSUE NO. 1: What do you find from a preponderance of the evidence to have been the reasonable cash market value of the citrus fruit in question at the Plaintiffs' place of business at the time the same would have been delivered to them but for its diversion?

Answer in Dollars and Cents
Answer: $4,492.13

"SPECIAL ISSUE NO. 2: Do you find from a preponderance of the evidence that the failure and refusal of the Defendants to deliver the citrus fruit to the Plaintiffs and subsequent sale thereof without reimbursing the Plaintiffs for the cost thereof, was done so with malice?

Answer 'Yes' or 'No'
Answer: Yes

'If you have answered the preceding Special Issue 'Yes', then answer the following Special Issue.

"SPECIAL ISSUE NO. 3: What sum of money, if any, do you find from a preponderance of the evidence should be assessed against the Defendants by way of punitive damages?

Answer in Dollars and Cents
Answer: $3,500.00"

■ A corporation, such as Norton Refrigerated Express, Inc., by its nature must act through agents. All corporate action of the express company material to this case was at the direction of its president, Ray Norton. The evidence is of a stamp from which a jury might infer and find that Norton spoke and acted both for himself and the corporation and that all corporate activity was under Norton's direction and control. The evidence permits a jury to conclude that Norton personally ordered employees of the corporation to convert the fruit shipment when he knew or reasonably should have known in his individual capacity as well as an officer of the company that the fruit was the property of the appellees.

■ Under the circumstances, Norton is liable for the consequences of his conduct and acts and it is no excuse that he was acting as an officer of the express company. *Lone Star Mining Company v. Texeramics, Inc.*, 363 S.W.2d 868 (Tex.Civ.App. Eastland 1962, writ ref'd n. r. e.); *Alamo Downs v. Briggs*, 106 S.W.2d 733 (Tex.Civ.App. San Antonio 1937, writ dism'd); *Western Rock Company v. Davis*, 432 S.W.2d 555 (Tex.Civ. App. Fort Worth 1968, no writ). See also *K & G Oil Tool & Service Co. v. G & G Fishing Tool Serv.*, 158 Tex. 594, 314 S.W.2d 782 (1958); *Mayflower Investment Company v. Stephens*, 345 S.W.2d 786 (Tex.Civ.App. Dallas 1960, writ ref'd n. r. e.); 19 Am. Jur.2d, Corporations, Sec. 1382, p. 779; 18 Am.Jur.2d, Conversion, Secs. 126 and 127, pp. 234, 235.

■ Appellants' second, third and fourth points of error raise issues that no evidence supports the jury's answer to the malice issue (Special Issue No. 2 quoted earlier) as it pertains to the express company, and separately, as it pertains to Ray Norton individually and that the answer to the malice issue is contrary to the overwhelming weight and preponderance of the evidence. The trial court's charge to the jury defined malice as including "such gross indifference to the rights of another as will amount to a willful or wanton act done intentionally and without just cause or excuse." The appellants have not questioned the definition and it appears to be correct. See *Rodman Supply Company v. Parker*, 363 S.W.2d 838 (Tex.Civ.App. El Paso 1962, writ ref'd n. r. e.); *Holland v. Lesesne*, 350 S.W.2d 859 (Tex.Civ.App. San Antonio 1961, writ ref'd n. r. e.); 17 Tex.Jur.2d, Damages, Sec. 178.

■ Relevant to malice and Norton's state of mind, individually and as agent for the corporation, is this extract from his examination:

"Q You assumed that Sunkist was the legal owner?

A Right.

Q But regardless of who the legal owner was, it really didn't make any difference to you once that fruit left Ohio, and you were going to sell it?

A My intention was to collect the money that Sunkist owed me.

Q Once the fruit left Ohio, you intended to sell the fruit?

A Yes, sir.

Q And you assumed Sunkist owned it, but you did not know?

A I had no way of knowing . . . otherwise . . . I assumed it was . . . yes."

There is direct and inferential proof that Ray Norton expended considerable effort to secure the shipment in suit from the packing house of Sunkist Growers, Inc. in order to use it as the stake in a stratagem to force Sunkist to pay alleged delinquent freight charges unconnected with this particular shipment. Uncontroverted evidence establishes that title to the citrus fruit was in appellees, not Sunkist Growers, Inc., at the time the shipment was loaded onto the express company's truck. Each of the appellees, as well as Sunkist, advised Norton that the appellees owned the fruit that he accepted for transportation. The appellees went so far as to offer to pay transportation charges in advance to obtain delivery. From the record as a whole, ample evidence may be found to support the jury's verdict on the malice issue and evidence to the contrary is not of overwhelming weight and preponderance. See *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118 (Tex.Civ.App. Tyler 1975, writ ref'd n. r. e.), holding that malice may be inferred from conscious conversion of another's property.

 Appellants moved for a new trial on the ground that Special Issue Nos. 2 and 3 were multifarious. A multifarious issue is one that has two or more questions susceptible to different answers. The motion was overruled. The appellants' objection to the charge is not found in the transcript and it is questionable whether the alleged vice in the charge was adequately brought to the attention of the trial judge. The complaint is that the malice (No. 2) and exemplary damage (No. 3) issues should have been submitted separately as to each appellant, and not as to the two parties in combination by referring to them simply as "defendants." The appellees' trial petition alleged that the appellants willfully, maliciously and wantonly converted and sold the citrus fruit in question and kept the pro-

ceeds therefrom. Such allegation constitutes a pleading that the express company and Norton were joint tort-feasors. Persons acting together in effecting a conversion may be held jointly and severally liable. *Ward v. Odem*, 153 S.W. 634 (Tex.Civ. App. San Antonio 1913, no writ); *Hazleton v. Holt*, 285 S.W. 1115 (Tex.Civ.App. Amarillo 1926, writ dism'd); *Grabes v. Fawcett*, 307 S.W.2d 311 (Tex.Civ.App. Texarkana 1957, no writ); 14 Tex.Jur.2d, Conversion, Sec. 52; 18 Am.Jur.2d, Conversion, Secs. 120, 125 and 126. In many instances it would be necessary to separate the parties in determining malice and exemplary damages as the evidence may be very different as it affects each party. However, under the unusual facts of this case, error is not shown. The acts, conduct and intent of Ray Norton, whether as president of the express company or as an individual, were the subject of jury determination. In this instance he spoke and acted for both and his intention, conduct and acts were attributable to both. Had separate issues been submitted as to each appellant, it would have been Norton's conduct, acts and intentions that governed the issue. There is no rational interest to be served by requiring a jury to go through this needless repetition.

 Exemplary damages must be reasonably proportional to the actual damages that are sustainable on appeal. *Southwestern Investment Company v. Neeley*, 452 S.W.2d 705 (Tex.1970). An analysis of the record does not show that the $3,500.00 exemplary damages is out of proportion to the actual damage award of $4,492.13. See *Bank of North America v. Bell*, 493 S.W.2d 633 (Tex.Civ.App. Houston-14th 1973, no writ); *Bisso v. Southworth*, 71 Tex. 765, 10 S.W. 523 (1888); *Pan American Petroleum Corporation v. Hardy*, 370 S.W.2d 904 (Tex. Civ.App. Waco 1963, writ ref'd n. r. e.). Necessarily, the excessiveness point must be overruled.

Having found no reversible error or excessiveness in judgment, it becomes the duty of this Court to affirm the judgment of the trial court. It is so ORDERED.