H. E. DUFF v. W. P. MATTHEWS AND PAUL H. PFEIFER

No. A-6326. Decided March 5, 1958.
Rehearing overruled April 16, 1958.
(311 S.W. 2d Series 637)

334

*John J. McKay* and *Julian C. Clopton,* both of Austin, for petitioners.

There is no evidence to sustain the finding of necessity, and the court erred in concluding that there was. Shelton v. Belnap, 155 Texas 37, 282 S.W. 2d 682; City of Dallas v. Roffman, Texas Civ. App. 234 S.W. 121; Phillips v. Nauman, 154 Texas 153, 275 S.W. 2d 464.

*Calvin Jayroe, Cofer & Cofer* and *G. Hume Cofer,* all of Austin for respondents.

In reply to petitioner's contentions, respondents cite Scarborough v. Anderson Bros. Construction Co., 90 S.W. 2d 305, error dismissed; Neilson v. Texas Trust & Security Co., 147 S.W. 2d 321, error dismissed, correct judgment; Fox v. Dallas Hotel Co., 111 Texas 461, 240 S.W. 517.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit by respondents as plaintiffs in the trial court against petitioners, as defendant, to establish a roadway over the petitioner-defendant's land. The parties will be referred to as they were in the trial court. Plaintiffs sought to establish such roadway by prescription, that it was a public road, and by necessity. The jury findings were against plaintiffs on their theory of prescription and a public roadway and the case reaches this Court only on the necessity theory. The trial was to a jury, and upon the rendition of a verdict the trial court disregarded the jury's findings in favor of defendant on his defense of the three year statute of limitation [Article 5507, Vernon's Civ. Stat. of Texas] and rendered judgment for plaintiffs, thus establishing the roadway across defendant's lands at a place to be laid out by three commissioners appointed by the court in accordance with the court's judgment. Upon appeal to the Court of Civil Appeals this judgment was affirmed. 300 S.W. 2d 679.

In December, 1912, J. F. Clark, who owned a large tract of land used as a ranch, subdivided a portion of this ranch adjoining and abutting on a portion of the Colorado River, known as Lake Austin, into lots and blocks, as designated, upon the plat of Bruton Springs Subdivision. He dedicated this subdivision by filing a map of the same in the office of the County Clerk of Travis County, Texas. This map, together with the statement by Clark and other notations thereon, were duly recorded by the County Clerk in the plat records of Travis County, Texas. Clark "reserved a strip of ground 30 feet wide for roads wherever said roads are shown on said map." The sketch appended hereto is that of part of the Subdivision which is pertinent to this cause and necessary for an understanding of the same.

From an examination of this plat we see there are reserved roads that will give access to each and every lot in the Subdivision. The road that was reserved across the Subdivision touching Lots 1 to 17 is referred to in the record as the "upper road." For access to Lots 18-21 there is a dedicated road referred to as the "lower road." This last road, as shown by the map, extends only to the west line of Lot 18, but plaintiffs seek a roadway across defendant's property out of Lot 6 by extending such lower road across defendant's property to the eastern boundary of Lot 4. Plaintiff, Matthews, owns the west one-half of Lot 5 and the balance of Lot 6, except that part which he deeded to defendant Duff. Plaintiff, Pfeifer, at the time the suit was filed, owned Lots 2 and 3. Since the suit was filed, and prior to the trial of the cause in the court below, Pfeifer had purchased Lot 1 and about 6.5 acres of Lot 60. From the evidence, it is not clear that the part of Lot 60 owned by Pfeifer adjoined Lot 1, but all the testimony indicates that this is true, and we so treat it. Plaintiffs claim that they are unable to use this upper road which runs across their property because it has grown up with brush and is in a bad state of repair. In addition, they claimed that this upper road was located on top of a bluff, or hill, situated a short distance north of the road, making access to the lake front part of their lots from this road impossible and that it is necessary to use the lower road to reach their property.

J. F. Clark, on July 10, 1914 sold the west one-half of Lot 5 and all of Lot 6 to C. M. Miller. Plaintiff Matthews, succeeded to this title and in 1950 sold a portion of the lake front of Lot

6 to defendant, Duff, retaining a 10-foot strip of land on Lot 6 adjoining Duff's land on the east. This tract of land is approximately 100 feet wide by 300 feet long. At the time Clark sold the tract to Miller, Clark was the owner of Lots 2 and 3, as well as other lots in the Bruton Springs Subdivision, and a tract of some 1,200 acres in the A. Ritcheson Survey to the east of the adjoining Bruton Springs Subdivision. Clark did not part with title to Lots 2 and 3 until 1915. Mr. Clark was 86 years of age at the time his deposition was taken in 1955 and he had died previous to the trial of this cause.

■ At the end of the testimony, the cause was submitted to the jury on special issues. Plaintiffs made no complaint of the answers of the jury against three of their grounds of recovery, but rely upon Special Issues Nos. 12 and 13 and the jury's answers thereto to sustain the trial court's judgment establishing the roadway across the Duff property. To Special Issue No. 12 the jury answered that in 1950 when Matthews conveyed to Duff, the claimed road was continuous, obvious, apparent and necessary to use by Matthews of the property he retained. To Special Issue No. 13 the jury answered that in 1914, when Clark conveyed to Miller, the claimed road was continuous, obvious, apparent and necessary to use by Clark of the property he retained. Since plaintiffs rely upon a way of necessity, they had the burden of proving all the facts necessary to establish such right. Bains v. Parker, 143 Texas 57, 182 S.W. 2d 397 (6-9). The way of necessity must be more than one of convenience for if the owner of the land can use another way, he cannot claim by implication to pass over that of another to get to his own. Alley v. Carleton, 29 Texas 74, 94 Am. Dec. 260. If, at the time Clark conveyed in 1914, or Matthews at the time he conveyed in 1950 had any right to pass over any of the surrounding or adjoining tracts, whether by prescription, necessity or otherwise, there can be no way reserved by implication in each respective deed. Bains v. Parker, supra; 28 C.J.S., 699, Sec. 35; 17 Am. Jur. 674, Sec. 62. The deed from Clark to Miller in 1914, under which plaintiff Matthews held title in 1950 to Lot 6 and the west half of Lot 5, and the deed from Clark to Brownlee in 1915, under which Pfeifer holds title to Lots 2 and 3, are each general warranty deeds without any reservations or exceptions of a roadway across the land conveyed. Each of these deeds purports to convey the whole estate of the grantor in and to the property described and warrants the title to such property generally and without any exception. No deeds in their respective chains of title make any reservation, exception or mention of a claimed roadway. The right of a roadway claimed by plaintiffs is

in derogation of the deeds under which they hold title, and, in the case of Matthews by which he granted title to Duff. While an implied reservation may arise, even in the face of a general warranty deed, the burden is on the one seeking to establish such implied reservation of a roadway to exclude, by proof, the possibility of another way of ingress and egress except the way claimed. Othen v. Rosier, 148 Texas 485, 226 S.W. 2d 622, bot. 1st. col., p. 626. As was said in that case, "* * * Rights claimed in derogation of warranties are implied with great caution, hence they should be made clearly to appear. Sellers v. Texas Cent. Ry. Co., 81 Texas 458, 17 S.W. 32, 13 L.R.A. 657; Scarborough v. Anderson Bros. Const. Co., Texas Civ. App., 90 S.W. 2d 805, er. dism."

■ This Court, in the recent case of Mitchell v. Castellaw, 1952, 151 Texas 56, 246 S.W. 2d 163, discussed at some length the doctrines of "strict" v. "reasonable" necessity, and the applicable authorities. In that case this court held in unequivocal terms that Texas was committed to the doctrine of "strict" necessity. We there said, "* * * But the latter, ['strict necessity'] too, has its good points. It is undoubtedly simpler of application. Moreover, as occasionally stated in the books, the whole theory of implied easements is somewhat in derogation of the registration statutes and indeed the Statutes of Frauds, while even the term 'strict necessity' is not hopelessly inelastic for sensible application to varying sets of facts. On the whole, we believe the requirement of strict necessity as prerequisite to all implied reservations of easements is more in accord with our local practices and traditions then a contrary view would be." In the case of Othen v. Rosier, supra, this Court held there were three requisites for a way of necessitiy, to-wit: (1) unity of ownership of the alleged dominant and servient estates; (2) that the roadway is a necessity, not a convenience; and (3) that the necessity existed at the time of the severance of the two estates. See also 28 C.J.S. 694, et seq., Secs. 34-35; 17A Am. Jur. 671, Sec. 59, et seq.; 34 A.L.R. 242, III, *Ways by Implied Reservation*, citing cases from Alabama, Kentucky, Maryland, Massachusetts, Mississippi, Missouri, New Jersey, New York, Vermont, West Virginia, Wisconsin and England. To this list may be added California, Michigan and Pennsylvania, 100 A.L.R. 1322, I-b, 1327, III.

■ Now let us consider the testimony with regard to Pfeifer's property. Mr. J. F. Clark was the only witness who testified to conditions of roads, etc. in 1914 when Clark conveyed Lot 6 and the west half of Lot 5 to C. M. Miller. All other testimony

relates to events later in time. Mr. Clark's testimony is that he owned the Subdivision and a ranch out of the A. Ritcheson Survey joining the Subdivision on the east; that by the roads set out on the plat he filed for record he had provided a road to all of the lots in the Subdivision; that the upper road provided ingress and egress to Lots 1-17; that ingress and egress was provided to these same lots from the east by the road coming through the Ritcheson Survey (which was then a part of his ranch) ; that such ingress and egress to these lots from the east was not shut off until his sale of the 1,200 acre ranch; that the ranch was sold while he was living in Calhoun County, Texas; that he lived in Calhoun County from some time in 1915 to some time in 1921; that after he sold to Miller he could still have access to the lake front of Lots 2 and 3 by going across other lots he still owned. In answer to a question as to whether this upper road was on the bluff, Clark said, "You talk about the bluff there, there is two or three different levels there after you get up from the river, * * *" and that this upper road was not on the river level. He further testified that a part of each lot fronting the river was upon the bluff and a part was down below on the river front; that after the subdivision was laid out more of the public going to the lake front of the lots used the lower road than the old road, (referring to the upper road) because as soon as he sold that ranch and while he was in Calhoun County the old, or upper road, was closed by a fence across its east end, and then all came the other way—on the lower road; that the river front of the lots, generally speaking, was accessible from the part of each lot which was above the bluff, and that a person could get through the upper road from the west end.

As late as 1915, when witness, Brownlee, purchased Lots 2 and 3 from Mr. Clark, the upper road gave access to Lots 2 and 3. Brownlee testified by deposition that a person could not drive a car from the lake up the hill to the upper road, but that one could go on foot; that a short time prior to the purchase of these lots he and another man drove on the upper road to Lots 2 and 3 in order to locate the upper corners of the lots; that the lower road was necessary to reach the lower part of Lots 2 and 3 in 1915. There was no evidence at all presented as to whether or not a road could be constructed that was usable from the upper level to the lower level.

Mr. Pfeifer, one of the plaintiffs who purchased Lots 2 and 3 under the Houghton Brownlee chain of title, testified that the upper road was open for some 250 to 300 feet on each side of

a power line which bisected the road at right angles in the vicinity of Lots 10 and 11 and that such road showed evidence that vehicles may have been driven thereon some year or two prior to the trial of the case in 1956; that the east end of the upper road is closed because of a wire fence on the division line between Lots 1 and 2 and a net fence along the south line of Lot 1 and that this net fence has an apparent gate where the road may have at one time entered; that this upper road could be used from the west end if it were reworked and made passable; that there was some talk of moving the lower road farther uphill; that the lower road was necessary to reach Lots 2 and 3.

Mr. Schoolfield, a surveyor and plaintiffs' witness, testified that in 1941 when he was making a survey of Lots 4, 5 and 6 to put down corners he drove his automobile to these lots on the upper road one time and on the lower road one time. He also testified that the part of the lots above the bluff was a practically level strip for a short distance, and that it was a gradual slope down to the river to a very precipitous terrain some 300 to 400 feet, but that he would not call it a bluff; that he traveled the upper road as far as Lot 2 and that the upper road, which he had traveled in 1941, would give an entry "to all lots between Nos. 1 through 17," and that roads reserved on the plat would be a way to reach all of the lots in the Subdivision. Surveyor, Claude Bush, for plaintiffs, testified he could lay out the upper road from the faint evidence on the ground. Instead of the evidence showing there existed a necessity to cross Lot 6 and the west half of 5 to have access to the lake front of Lots 2 and 3 in April 1914, it conclusively shows there were other means of access available at such time; namely, from the lands still owned by Clark and by means of existing roads then used and traveled.

■ Now we come to the judgment in favor of plaintiff, Matthews, based on the jury's answer to Special Issue No. 12. In 1950 when Matthews deeded to Duff his tract of land, Matthews continued to own land south and east of the Duff tract. That land south was crossed by the upper road and thus access was afforded to Matthews' land. It may be true that Matthews and other lot owners, as a matter of convenience, were not then using the upper road to reach their property and that the upper road had grown up in trees and underbrush and possibly washed out to the extent that it was no longer passable. These facts do not give Matthews a way of necessity across the property he conveyed to Duff by a "straight" general warranty deed. In Carey v. Rae, 58 Cal. 159 (a state following the strict necessity

doctrine), it is said: "If the appellant has any right whatever to burden the respondent's land, it originates only in the necessity of the circumstances in which he is placed, and not in grant. Those circumstances show that he has a way, which needs repair, and that until repaired it is impassable. But the impassability of the road gives to a party no right to an easement." The evidence shows that part of Lot 6 and the west half of 5 north of the upper road down to the lake front is approximately 450 feet long, while Duff's tract is only approximately 300 feet long. This leaves between Duff's property and the upper road some 150 feet of Matthews' land which adjoins the river front part of Lot 7. Such access may not be as convenient as a way across Duff's land, but Matthews cannot have a way of convenience across Duff's land in the face of his deed to Duff, but such way must be one of "strict" necessity. Mitchell v. Castellaw, supra; Othen v. Rosier, supra; 100 A.L.R. 1321, et seq.; 103 A.L.R. 993, annotation. There is a further reason why Matthews cannot have a way of necessity implied into his deed to Duff; viz., Matthews still owns the south portion of his property which is crossed by the upper road and the upper road can be cleared out and repaired so as to be traveled, entering from the west end and continuing across Lot 6 and the west half of Lot 5 now owned by Matthews. In Kripp v. Curtis, 71 Cal. 62, 11 Pac. 879, 880, it is said: "The right of way from necessity must be in fact what the term naturally imports, and cannot exist except in cases of strict necessity. It will not exist where a man can get to his property through his own land. That the way over his own land is too steep or too narrow, or that other and like difficulties exist, does not alter the case; and it is only where there is no way through his own land that a grantee can claim a right over that of his grantor. It must also appear that the grantee has no other way." To the same effect see McDonald v. Lindall, 3 Rawle (Pa.) 492 and Cooper v. Maupin, 6 Mo. 624, 35 Am. Dec. 456. Having a road to one part of his tract of land, Matthews cannot have another way of necessity to another part of this same tract. Alley v. Carleton, supra; Bains v. Parker, supra; Ogden v. Jones, Texas Civ. App., 1931, 37 S.W. 2d 777; Jack v. Hunt, 200 Ore. 263, 264 Pac. 2d 461, (1953); and 17A Am. Jur. 674, Sec. 62, as follows:

"It is generally held that a claimant cannot have a way of necessity over lands granted or reserved if he has another mode of access to his land, however inconvenient. This is generally true if the claimant has a right of way over the land of another. This is also true even though a grantor may have used a way to the public road over the lands granted at the time of, and

for a long time before, the conveyance, and the grantee may have had notice of such use at the time of the conveyance. The rule than an easement is not implied as a way of necessity where there is another mode of access has been applied in respect of land bordring on navigable waters. Moreover, a person is not entitled to a right of way as a way of necessity from one part of his land to another part of the same contiguous tract over the land of another, notwithstanding such a right of way might be highly convenient, and this may be so even where the rule applied is that of reasonable, rather than absolute, necessity."

Several witness testified that the lower road was "necessary" if one were to reach the lake front part of Lots 2 and 3 and the lake front parts of Matthews' Lots 5 and 6. An examination of the record shows this testimony was a conclusion on the part of the witnesses which is not borne out by the record as a whole.

The judgments of the trial court and the Court of Civil Appeals are reversed and judgment here rendered that plaintiffs take nothing, and that defendant, Duff recover all costs.

Associate Justice Garwood not sitting.

Opinion delivered March 5, 1958.

Rehearing overruled April 16, 1958.