NUMBER 13-04-571-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


HOWARD ROSS, ALTON ROSS

AND GWENDOLYN ROSS, Appellants,


v.
 


WALTER WOMACK, Appellee.

 


On appeal from the 377th District Court 


of Victoria County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Rodriguez



 Appellee, Walter Womack, filed the underlying suit in the district court of
Victoria County asserting that only revocable permission was given appellants, Howard
Ross, Alton Ross and Gwendolyn Ross (the Ross family), (1) to enter and cross his
property and seeking a declaratory judgment that appellants had no right to an
easement across his land in order to reach their property. Granting summary judgment
in favor of Womack, the trial court declared that the Ross family was not entitled to
any easement across Womack's property other than to visit the grave sites of their
ancestors. (2) The trial court also awarded Womack attorney's fees. By eleven issues,
the Ross family contends that the trial court erred in granting Womack's motion for
summary judgment and in awarding attorney's fees. We reverse and remand.

I. Background

 In the late 1800s, the Ross family's ancestors, Fred Rydolph (3) and Nash Harvey,
purchased approximately 200 acres (the Rydolph Ranch) out of the C.L. Mann and
James Wilson Surveys, two adjacent surveys located in Victoria County, Texas. At
approximately the same time, Womack's ancestor, James A. McFaddin, (4) also
purchased acreage (the McFaddin Ranch) out of the Mann and Wilson Surveys. In
1960, Earl and Lena Rydolph, the son and daughter-in law of Fred and Rosa Rydolph,
purchased additional acreage a short distance from the Rydolph Ranch, within the Bias
Scott Survey (the Scott Property), and along the easement at issue in this case. 
Through inheritance and by purchase from their ancestors, the Ross family now owns
approximately eighty acres located within the Rydolph Ranch and the Bias Scott
Survey. Womack acquired his land in 1990, following partition. (5) Originating from the
McFaddin Ranch, Womack's 3,318.76 acres surrounds the property owned by the
Ross family. As their ancestors had done in order to reach their property, the Ross
family must travel across what is now Womack's property by way of the easement at
issue in this case.

 In August 1992, two years after acquiring his land, Womack entered into a
hunting lease agreement with Alton and Howard. A few months after signing this
agreement, Womack installed a locked gate at the entrance to the road. (6) Womack
gave keys or combination locks for that gate to the Ross family, among others. At the
end of the summer of 2002 when Womack terminated the lease, Womack offered to
purchase the Rydolph Ranch and the Scott property. The Ross family refused this
offer. (7) Claiming that use of the easement across his property was by permission only,
Womack later notified the Ross family that they no longer had his permission to use
his property for entering and exiting their land. On October 17, 2002, Womack's
attorney, Robert Houston, mailed a written notice of the revocation of this permission
to each appellant.

 On February 4, 2003, Womack filed this declaratory judgment action to
determine whether the Ross family had easement rights across his property. The Ross
family answered with a general denial and counterclaimed against Womack seeking a
declaration that the family had a legal right to use the road to obtain ingress and
egress to the property based on an easement by implied necessity and/or an easement
by estoppel. Pursuant to the declaratory judgment act, the Ross family also sought
to recover its attorney's fees.

 On August 17, 2004, Womack filed a second traditional motion for summary
judgment and a no-evidence motion for summary judgment. (8) Womack asserted that
use of the road or easement was based on permissive use that he revoked and that the
Ross family had failed to produce any evidence supporting an easement by express
grant, implication, necessity, prescription, or estoppel. Womack attached the
following exhibits in support of his motions: (1) a partition deed; (2) Womack's
affidavit; (3) Howard's deposition transcript; (4) Alton's deposition transcript; (5)
Gwendolyn's deposition transcript; (6) correspondence; (7) the plat; and (8) the
affidavit of Houston, Womack's attorney. Womack later supplemented his motions
attaching a second affidavit wherein attorney Houston stated that the exhibits
attached to the motions were "true and correct copies of the documents they purport
to be." Womack also requested that he be awarded his attorney's fees.

 The Ross family responded to Womack's second traditional motion for summary
judgment claiming that a question of material fact regarding Womack's claim of
"permissive use" precludes summary judgment and asserting objections to Womack's
affidavit as contradictory, not readily controverted, unsubstantiated and conclusory,
to attorney Houston's affidavit as deficient, unsupported and conclusory, and to the
uncertified partition deed as deficient and inadmissible. The family also objected to
Houston's October 17, 2002 revocation letter as conclusory, unsubstantiated and
contradictory and to certain deposition testimony provided by Womack as irrelevant. 
The Ross family argued that Womack had "failed to meet his burden to prove every
element of his claim that he allowed the Ross family mere 'revocable permission' to
cross his land in order to obtain ingress and egress to their own property." The family
claimed Womack failed to establish his claim of permissive use and thus, the Ross
family had no burden to respond to the traditional motion for summary judgment.

 In addition, the Ross family asserted that it produced more than a scintilla of
evidence of easement by estoppel and implied easement by necessity to defeat
Womack's second no-evidence motion for summary judgement. The Ross family
incorporated the following exhibits filed in response to Womack's first-filed motions: 
(1) a run sheet by Titles, Inc., and correlating deeds; (2) a report from Titles, Inc., on
the C.L. Mann Survey, A-528 and James Wilson, A-529; (3) a map; (4) a copy of that
handwritten deed from J.T. Southwell to Nash Harvey and Frederick Rydolph; (5)
Womack's original petition filed February 4, 2003; (6) the partition deed to Womack;
(7) an unsigned levy agreement dated May 9, 1916, and filed September 18, 1916,
between J.A. McFaddin and Fred and Rosa Rydolph and Nash Harvey; (8) deposition
testimony of Howard, Alton, Gwendolyn and Womack; and (9) an October 17, 2002
letter to Howard from Womack's attorney, Houston. Additionally, the Ross family
attached the following exhibits to its second response and/or its supplements: (1) an
aerial photograph of the Ross property; (2) an unsigned order denying their motion for
temporary injunction; (3) the affidavit of Julia Sarlls regarding deed records; (4) a
warranty deed with vendor's lien and transfer of lien from Verna Hall to Howard and
Alton; (5) a warranty deed with vendor's lien from Odie Leo Scott to Earl C. Rydolph
and Lena M. Rydolph; (6) a correction deed from Mamie Harvie to Wesley Joshua
Rydolph; (7) a warranty deed from Elijah Scott to Earl C. Rydolph and Lena M.
Rydolph; (8) a deed of trust to C.C. Carsner, Jr.; (9) a release of vendor's lien and
deed of trust lien to Earl C. Rydolph and Lena M. Rydolph; (10) the will of Wesley J.
Rydolph and related documents; (11) a lease agreement; (12) a map drawn by
Womack; (13) the affidavit of C. Kerry McCan; (14) the affidavit of Gwendolyn and
photographs; (15) current photographs of the Ross family property taken pursuant to
a rule 11 agreement; and (16) the affidavit of the Ross family's attorney, Marilyn
Lawson, verifying the exhibits.

 On September 21, 2004, after noting the parties' earlier open-court stipulation
regarding access to the grave sites of the Ross family ancestors and without
specifying the grounds, the trial court granted summary judgment in favor of Womack
ordering that Howard, Alton and Gwendolyn Ross were not entitled to any easement
across the property owned by Womack, other than the right to visit the grave sites
noted above. The trial court also awarded Womack attorney's fees. This appeal
ensued.

II. Standard of Review

 We review the granting of a traditional motion for summary judgment de novo. 
Branton v. Wood, 100 S.W.3d 645, 646 (Tex. App.-Corpus Christi 2003, no pet.)
(citing Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Tex. Commerce
Bank Rio Grande Valley v. Correa, 28 S.W.3d 723, 726 (Tex. App.-Corpus Christi
2000, pet. denied)). To prevail on a traditional motion for summary judgment, the
moving party has the burden of showing that there is no genuine issue of material fact
and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Cathey
v. Booth, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). Only when the movant
meets this burden does the burden shift to the non-movant to raise a genuine issue of
material fact. See M.D. Anderson Hosp. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000)
(per curiam); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.
1979). In determining whether there is a genuine issue of material fact, evidence
favorable to the non-movant is taken as true, and all reasonable inferences and doubts
are resolved in favor of the non-movant. Branton, 100 S.W.3d at 646. The non-movant has no burden to respond to a traditional motion for summary judgment unless
the movant conclusively establishes its cause of action or defense. Willrich, 28
S.W.3d at 23.

 A no-evidence summary judgment asserts there is no evidence of one or more
essential elements of claims upon which the opposing party would have the burden of
proof at trial. Tex. R. Civ. P. 166a(i). A no-evidence motion for summary judgment
is properly granted only if the non-movant fails to bring forth more than a scintilla of
probative evidence raising a genuine issue of material fact as to the challenged element
of the claims. See id.; AMS Constr. Co. v. Warm Springs Rehab. Found., 94 S.W.3d
152, 159 (Tex. App.-Corpus Christi 2002, no pet.). Less than a scintilla of evidence
exists when the evidence is "so weak as to do no more than create a mere surmise or
suspicion" of a fact. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex.
2003). More than a scintilla of evidence exists when the evidence "rises to a level
that would enable reasonable and fair-minded people to differ in their conclusions." 
Id. (quoting Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). 
The non-movant's failure to respond to a no-evidence motion is fatal. See Michael v.
Dyke, 41 S.W.3d 746, 751 (Tex. App.-Corpus Christi 2001, no pet.). In reviewing
a no-evidence summary judgment, we apply the same legal sufficiency standard that
is applied in reviewing directed verdicts. Zapata v. Children's Clinic, 997 S.W.2d 745,
747 (Tex. App.-Corpus Christi 1999, pet. denied). We view the evidence in the light
most favorable to the non-movant and disregard all contrary evidence and inferences. 
Id. (citing Havner, 953 S.W.2d at 711; Moore v. Mart Corp., 981 S.W.2d 266, 269
(Tex. App.-San Antonio 1998, pet. denied)).

 When, as in this case, a trial court's order granting summary judgment does not
state the grounds upon which it was granted, the judgment must be affirmed if any
of the grounds advanced in the summary judgment motion are meritorious. Branton,
100 S.W.3d at 647 (citing Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Boren
v. Bullen, 972 S.W.2d 863, 865 (Tex. App.-Corpus Christi 1998, no pet.)).

III. Analysis

A. Permissive Easement By its first issue, the Ross family generally contends that the trial court erred
in granting a traditional summary judgment in Womack's favor. In its first, fifth and
sixth issues, the Ross family more specifically argues that Womack's summary
judgment evidence does not establish the Ross family and its ancestors had merely
exercised permissive use of the road across the McFaddin Ranch to access their
landlocked property and homes. In support of his motion for summary judgment,
Womack attached copies of various documents evidencing his ownership of the
property and his affidavit detailing the permissive use of the roadway. According to
his affidavit, Womack owned the property at issue and maintained fences and gates
at the entrances to his property at all relevant times; fences and gates which had
various locks on them during the time he allowed the Ross family and others access
to cross his property. In his affidavit, Womack also set out that after allowing the
Ross family to use the roadway over the years for entering and exiting their property,
he gave them notice that they no longer had permission to use his property and
authorized his attorney to mail a written notice of the revocation of this permission to
each appellant. The October 17, 2002 written notice from his attorney provided the
following:

 For many years [the Ross family has] been given permission by [Womack]
or his predecessors in title to cross land which is now owned by
[Womack] for the purpose of accessing property owned by [the Ross
family]. . . . [Womack] has elected to terminate [the Ross family's] right
to cross his property to access your land. The purpose of this letter is to
notify you that you no longer have any right to travel across [Womack's]
property. In that regard, [Womack] intends to place a lock on the gate
entering his property, and to maintain the gate in a locked condition.


Copies of this letter were attached to the motions. Womack also attached the
transcripts of his own deposition testimony and that of the depositions of Howard,
Alton and Gwendolyn. He asserts that this evidence established that he maintained
gates and fences on his property that had locks and barred access, that he gave
appellants as well as others permission to cross his land and pass through the gates, 
and that appellants neither complained about the gates nor asserted their right to an
easement without gates and locks. See Tex. R. Civ. P. 166a(c) ("A summary judgment
may be based on uncontroverted testimonial evidence of an interested witness . . . if
the evidence is clear, positive and direct, otherwise credible and free from
contradictions and inconsistencies, and could have been readily controverted."); see
also Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989) ("[I]f the non-movant must,
in all likelihood, come forth with independent evidence to prevail, then summary
judgment may well be proper in the absence of such controverting proof.").

 However, in response, the Ross family produced copies of their deposition
transcripts and the affidavit of C. Kerry McCan. McCan provided, in his affidavit, that
"[t]he Rydolph family and Ross family never needed permission from the McFaddins
to use the road to cross McFaddin land to reach their own property, tend their own
cattle, and reach their home." The Ross family also argues that the locked gates do
not establish mere permissive use. Although Womack presented evidence that he
maintained locked fences and gates at the entrances to his property at all relevant
times and allowed the Ross family and others access to cross his property, Howard
testified at his deposition that "[w]e have always had a right to that property. . . . Our
heirs always and ourselves always had a right to that property. . . . [W]e didn't need
their permission." Howard agreed that he always cooperated with the owners of the
McFaddin property and did not complain or contend that Womack did not have a right
to put up a locked gate to the property, "[a]s long as we had a key to get in." Alton
testified that he agreed with everything that Howard said in his deposition. 
Gwendolyn testified that she did not take any position that Womack did not have a
right to put the gate up and did not challenge Womack, "because [she] thought that
the gate was being put there for the purpose of keeping, say, outlaw hunters or other
people out for protection, so [she] had no reason to talk to him about it."

 Taking this evidence favorable to the Ross family as true and resolving all
reasonable inferences and doubts in favor of the family, Branton, 100 S.W.3d at 646,
we conclude that it creates a fact issue about whether the use was permissive as to
the Ross family and its ancestors. We sustain the fifth and sixth issues. We also
sustain the first issue to the extent it addresses permissive use as a basis for the trial
court granting Womack's traditional summary judgment.

 Nonetheless, it is undisputed that Womack owned the property in question. 
Further, it is undisputed that there was no express conveyance or grant of an
easement made to the Ross family by Womack or his predecessors-in-title. Womack
further established his revocation of any permission he had given to use the roadway
across his property. An easement is considered an interest in land; therefore, the
creation and transfer of that interest are subject to the statute of frauds, unless an
easement is imposed by operation of law. Drye v. Eagle Rock Ranch, Inc., 364
S.W.2d 196, 203 (Tex. 1962)); see Schilhab v. Dierlam, No. 13-03-00185-CV, 2004
Tex. App. LEXIS 7260, at *6 (Tex. App.-Corpus Christi Aug. 12, 2005, no pet.)
(memorandum opinion not designated for publication). Therefore, we must review
Womack's no-evidence argument that the Ross family failed to produce any evidence
supporting an easement by necessity or estoppel, easements created by means other
than a writing. (9)

B. Easement by Estoppel

 By its seventh issue, the Ross family contends that it has presented more than
a scintilla of evidence to support each element of easement by estoppel, and the trial
court erred in granting Womack's no-evidence motion for summary judgment. We
agree.

 In order to create an easement by estoppel, the following elements must exist:
(1) a representation was communicated, either by words or action, to the promissee;
(2) the communication was believed; and (3) the promissee relied on the
communication. Storms v. Tuck, 579 S.W.2d 447, 451 (Tex. 1979). An easement
by estoppel is binding on the successors in title to the servient estate if reliance upon
the existing easement continues. Holden v. Weidenfeller, 929 S.W.2d 124, 131 (Tex.
App.-San Antonio 1996, writ denied). Importantly, its application must depend on the
unique facts of each case. Wilson v. McGuffin, 749 S.W.2d 606, 610 (Tex.
App.-Corpus Christi 1988, writ denied).

 Complaining that no promises regarding an easement were ever made and
asserting that mere silence cannot create an easement by estoppel except where there
is a vendor-vendee relationship between the parties, see Scott v. Cannon, 959 S.W.2d
712, 721 (Tex. App.-Austin 1998, no pet.), in his second no-evidence motion,
Womack challenged only the first element of easement by estoppel-the representation
by word or action element. The Ross family responded by attaching the affidavit of
McCan, a member of the McFaddin family and holder of an undivided interest in a
portion of the McFaddin Ranch. (10) McCan stated that he worked cattle on the
properties in question alongside McFaddin, Womack, the Rydolphs and the Ross
family, and had personal knowledge of the families' use of their properties and the
road at issue. According to his sworn affidavit, from at least the 1930s the road was
the only means of access to the Ross property and remains in that same location
today. Although McCan had no knowledge of any written agreement, the statements
in his affidavit show that Womack's predecessors-in-title represented by conduct that
the Ross family and their predecessors had the right to use the road to cross
Womack's land in order to access their landlocked property. Additionally, McCan
stated that the Ross family's use of this road continued even after Womack acquired
the McFaddin land. Summary judgment evidence also established that the Ross family
repaired a home located on its property, maintained cemeteries on the property, and
after Womack installed the locked gate at the entrance to the road, had keys to the
gate.

 Determining easement by estoppel on a case-by-case basis, see Drye, 364
S.W.2d at 209, we conclude, based on the evidence before us in this case and
viewing it in the light most favorable to the non-movant and disregarding all contrary
evidence and inferences, see Zapata, 997 S.W.2d at 747, that the Ross family has
brought forth more than a scintilla of probative evidence raising a genuine issue of
material fact as to whether a representation, either by words or actions, was
communicated to the promissee; the challenged element of this claim. See Tex. R. Civ.
P. 166a(i). Moreover, we conclude that the conduct supported by the affidavit is more
than mere silence, and therefore, Womack's reliance on Scott for the proposition that
mere silence cannot create an easement by estoppel is misplaced under the facts of
this case. See Scott, 959 S.W.2d at 721 (setting out that passive acquiescence "for
no matter how long a period" will not estop landowner from denying existence of
easement across his land); see also Stallman v. Newman, 9 S.W.3d 243, 247 (Tex.
App.-Houston [14th Dist.] 1999, pet. denied) (finding that a failure to act, i.e.,
passive acquiescence in and of itself, cannot rise to the level of a "misrepresentation"
so as to create an easement by estoppel where there has never been any unity of title
between the two tracts of land). The Ross family's seventh issue is sustained. We
also sustain the first issue as it relates to easement by estoppel.

C. Easement by Necessity

 By its eighth issue, the Ross family contends that it provided more than a
scintilla of evidence to raise a genuine issue of material fact to show it was entitled
to an easement by necessity. An implied easement by necessity is established by
showing (1) unity of ownership prior to separation; (2) access is a necessity and not
a mere convenience; and (3) the necessity existed at the time of the severance of the
two estates. Duff v. Mathews, 158 Tex. 333, 311 S.W.2d 637, 641 (1958). 
Womack challenged all three elements in his no-evidence motion for summary
judgment and now on appeal asserts that:

 There is no evidence of unity of ownership, no evidence that at the time
the property was divided there was an apparent need for an easement,
no evidence that an easement was then in existence, no evidence of any
continuous use of such easement from the date of severance, and no
evidence that at the time of the severance any alleged easement was
reasonably necessary to the use and enjoyment of the dominant estate.

While the Ross family contends that it has presented more than a scintilla of evidence
to support each element, the only evidence to which we are directed, and we find
nothing more, to establish the unity element, is the testimony of expert, Julia Sarlls. 
She testified that "in September of 1874, a single individual, E.M. Phelps, owned all
1280 acres composing the C.L. Mann Survey, A-528, and the James Wilson Survey,
A-529, Victoria County, Texas." (11) Sarlls further testified as follows:

 [B]y the year 1882, James A. McFaddin owned all the land in the C.L.
Mann Survey, A-528, and the Wilson Survey, A-529, except 212 acres
on the East or Lower side deeded to W.R. Tom, 36 acres on the
Northwest corner originally deeded as 192 acres to Truman Phelps, Jr.
and the 192 acres deeded to Nash Harvey and Frederick R[y]dolph.

The Ross family next refers us to the following evidence it claims to have offered to
establish the remaining elements of easement by necessity: (1) in 1878, McFaddin
began purchasing property in the Mann and Wilson Surveys; (2) one year later Harvey
and Rydolph purchased the Rydolph Ranch; and (3) by 1882, McFaddin had purchased
all the remaining land in the Mann and Wilson Surveys, except for the Rydolph Ranch
and one parcel located in the lower side and a small parcel in the northwest corner. (12) 
From this evidence, the Ross family argues that McFaddin purchased the property
surrounding Rydolph Ranch with constructive notice of Rydolph and Harvey's existing
easement by necessity and that necessity of ingress and egress was created at the
time Phelps severed the properties now owned by Womack and the Ross family. We
disagree. This evidence, and we find nothing more, does not rise "to a level that
would enable reasonable and fair-minded people to differ in their conclusions," but
rather is "so weak as to do no more than create a mere surmise or suspicion" of a
fact. See Chapman, 118 S.W.3d at 751. Thus, even assuming that there is more
than a scintilla of evidence to support the unity element, we conclude that less than
a scintilla of evidence exists to establish (1) necessity and not mere convenience and
(2) that the necessity existed at the time of the severance of the two estates. Duff,
311 S.W.2d at 641. Thus, we overrule the Ross family's eighth issue and the first
issue as it relates to easement by necessity.

D. Cemetery

 In issues three, nine and ten, the Ross family raises issues regarding entitlement
to an easement to cemeteries on their property. We need not address these issues,
however, because Womack has conceded in his appellee's brief that he "has already
agreed at the trial court level to not oppose or interfere with any of appellants' rights
to access any burial plots on the property pursuant to section 711.041 of the Texas
Health and Safety Code." See Appellee's Brief p. 23.

E. Attorney's fees

 Finally, by the eleventh issue, the Ross family challenges the trial court's award
of Womack's attorney's fees. "In any proceeding under this chapter [of the Texas
Uniform Declaratory Judgement Act], the court may award . . . reasonable and
necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 1997). For the reasons set forth above, we have concluded the
trial court erred in entering final judgment in favor of Womack on his declaratory
judgment action. As a result, we further conclude the award of attorney's fees for the
prosecution of this matter to final judgment was in error. (13) We sustain the Ross
family's eleventh issue.

 Finally, because of our disposition of the above issues, we need not address the
second and fourth issues. (14) See Tex. R. App. P. 47.1.

IV. Conclusion

 Accordingly, we reverse and remand for proceedings consistent with this
opinion.


 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 14th day of December, 2006.
1. Gwendolyn Ross is the mother of Howard and Alton.
2. At the summary judgment hearing, the parties stipulated that appellants had a right to access
the burial grounds of their ancestors. See Tex. Health & Safety Code Ann. § 711.041 (Vernon 2003)
(setting out that "[a]ny person who wishes to visit a cemetery or private burial grounds for which no
public ingress or egress is available shall have the right to reasonable ingress and egress for the purpose
of visiting the cemetery or private burial grounds"). The final judgment acknowledges the stipulation
as follows:


 The parties stipulated in open court that the plaintiff's property surrounds grave sites
of the Defendant's [sic] ancestors. Accordingly, the parties stipulated that the
defendants have the right, pursuant to Texas Health and Safety Code § 711.041, to
visit such grave sites, during reasonable hours, for purposes usually associated with
cemetery visits. Accordingly, there is no dispute regarding this matter, and nothing for
the Court to determine.


Likewise, we need not address this issue on appeal as it has been resolved by the parties.
3. Fred Rydolph and his wife, Rosa, were Gwendolyn Ross's great-grandparents.
4. James A. McFaddin was Womack's great-grandfather.
5. This property is identified as Parcel 4 in a partition deed dated May 8, 1990, from C. K. McCan,
Jr., et. al, to Womack. The deed is recorded in volume 1573, page 434 of the deed records of Victoria
County.
6. Road and easement are used interchangeably throughout the opinion.
7. Womack had previously offered to buy the land prior to the death of Howard's and Alton's
maternal grandmother, but his offer had been refused.
8. In August 2003, Womack filed a traditional motion for summary judgment asserting that use
of the easement was based solely on his permission and a no-evidence motion contending there was no
evidence that the Ross family had a property interest in his property, specifically an easement across
his property. Womack claims that the trial court granted these motions on certain grounds; the Ross
family claims it did not. The judgment from which appellants bring this appeal does not mention an
interlocutory order, and we find no such order in the appellate record. Therefore, the only order before
this Court is the September 21, 2004, final judgment.
9. In his motion, Womack also argued that the Ross family produced no evidence of an easement
by implication or prescription. The Ross family raises no issues on appeal regarding such easements.
10. McCan's affidavit provided the following, in relevant part:


 3. I have personal knowledge dating back to the 1930s regarding the use of the
property and road that is the subject of this lawsuit.


 4. As a member of the McFaddin family, I worked cattle on the McFaddin Ranch
alongside the McFaddin family (Walter Womack and his predecessors in title),
the Rydolph family (the [Ross family's] predecessors in title, and [the] Ross
family members who are Defendants in this case.


 5. From at least as early as the 1930s, the property now owned by the Defendants
has been landlocked, surrounded by the property owned by Walter Womack's
predecessor in title, James A. McFaddin, and now by Walter Womack.


 6. From the 1930s to the present, there has been only one passable road to
provide ingress and egress from the property owned by the Defendants and their
predecessors in title. That road crossed the property owned by Walter Womack
and his predecessors in title and is still in existence at that same location.


 7. I have no personal knowledge that there was any written agreement between
the McFaddin family and the Rydolphs, and eventually the Rosses, regarding the
use of their respective lands and the aforementioned road, but there was a
modus operandi between them that allowed passage.


 8. Pursuant to this agreement, the Rosses, and their predecessors in title, ran one
head of cattle per five acres. In order to allow the cattle free range and a means
of escape in the event of flooding, the land now owned by the Rosses was to
be unfenced.


 9. Also pursuant to this agreement, the McFaddin family, the Rydolphs, and
eventually the Rosses, cooperated and tended their cattle together on the land
now owned by Walter Womack and land now owned by the Rosses.


* * * * *


 11. The road across the property now owned by Walter Womack was the only
means of access to the Rydolph/Ross property.


 12. The Rydolph family and Ross family never needed permission from the
McFaddins to use the road to cross McFaddin land to reach their own property,
tend their own cattle, and reach their home.


 13. The Ross family's use of this road continued even after Walter Womack
acquired the land once held by James A. McFaddin
11. Sarlls's testimony does not make reference to the Ross family land that is located within the
Bias Scott Survey.
12. The Ross family also attached as evidence various documents pertaining to the Kuy Creek
Easement. The Kuy Creek Easement agreement was entered into by Fred and Rosa Rydolph, James
McFaddin, and Nash Harvey in 1916. Under the terms of the agreement, Harvey and the Rydolphs
granted McFaddin an easement to build and maintain the Kuy Creek road and bridge that connects with
the road at issue and crosses the Rydolph Ranch. In return Harvey and the Rydolphs were given the
right to use the Kuy Creek road and bridge. Otherwise, the road was "to be a private road, to be used
by [McFaddin], his heirs and assigns and his and [Harvey's and the Rydolph's] tenants, employees and
agents." The parties also granted each other the reciprocal right to protect their respective land from
flooding with no liability for damages caused by constructing and maintaining flood control measures.


On appeal, the Ross family contends that because the Rydolph Ranch was surrounded by McFaddin land,
"[o]f necessity, there was an intention to grant a road easement to enable Rydolph and Nash to have
full enjoyment of the Kuy Creek Road." The family argues that "Rydolph and Harvey undoubtedly relied
upon the promise of an easement across McFaddin Ranch when they granted McFaddin the right to
bisect their land with a forty-foot wide road easement." The Ross family cites us to Machala v. Weems,
56 S.W.3d 748, 755 (Tex. App.-Texarkana 2001, no pet.), in support of its argument. In Machala,
the court provided that "an easement by necessity arises from a presumption that where a grantor
conveys to a person land that is totally surrounded by other lands belonging either to the grantor or to
the grantor and other persons, there was an intention to grant a roadway to enable the grantee to have
full enjoyment of the property conveyed and the failure to grant a passageway was an oversight and will
be implied in the grant." Id. at 755. In this case, however, the easement conveyed to grantee
McFadden was not surrounded by the grantor Rydolphs' land. Rather it was surrounded by land owned
by the grantee himself. Therefore, we cannot conclude that the Kuy Creek documents, this argument,
and the Ross family's authority supports its easement by necessity argument. Furthermore, because
of our disposition of the easement by estoppel issue, we need not address it under that section. See
Tex. R. App. P. 47.1.
13. Womack was awarded the sum of $17,000 for the prosecution of this matter to final
judgment, and in the event of a successful defense of an appeal to the court of appeals, the additional
sum of $5,000, and in the event of a successful appeal or defense of an appeal to the Texas Supreme
Court, the additional sum of $1,500.
14. In the second issue, the Ross family objects to Womack's affidavit and deposition testimony
and to attorney Houston's October 17, 2002 letter. In the fourth issue, it asserts that Womack did not
have the right to prevent the Ross family from crossing his land to reach its landlocked property, after
the Rosses and their ancestors and predecessors-in-title had used the right of way continuously for over
a century.