**Opinion issued October 25, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00773-CV

————————————

**CLEARPOINT CROSSING PROPERTY OWNERS ASSOCIATION AND CULLEN'S LLC AND 11500 SPACE CENTER, LLC, Appellants**

**V.**

**JOSEPH CHAMBERS AND DEBBIE CHAMBERS, Appellees**

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-05504**

## O P I N I O N

In this appeal, we determine the scope of two express easements and whether landowners may claim those easements, and an easement by necessity, to benefit their entire tract. After a jury trial, the trial court rendered a judgment in favor of landowners Joseph and Debbie Chambers, ruling that (1) the express easements

provide the entire tract with an unqualified right of access to a public road via the adjacent landowners' private road and parking lot; and (2) an implied easement by necessity gives the same unqualified right of access.

The adjacent landowners, who are burdened by these easements, appeal. First, the burdened landowners contend that the trial court erred in ruling that the express easements provide an unqualified right of access to the entire tract, because the express easements benefit only a portion of the tract and replaced an earlier, abandoned easement that granted access only for uses associated with drilling for oil and gas. Second, the burdened landowners contend that the trial court erred in ruling that the Chambers have an easement by necessity across the private road and parking lot because no evidence demonstrates a present necessity for access.

We conclude that the express easements benefit a portion of the Chambers tract, and not the entire tract, because they unambiguously limit the land benefitted by describing it. We further conclude that the express easements granting access do not limit that access to uses associated with drilling for oil and gas on the benefited tract. Thus, we reject the burdened landowners' contention that access is limited to that needed for oil and gas activity. Because the express easements grant a right of ingress and egress to a portion of—and not the entire—tract, we reverse the judgment declaring that the express easements benefit the entire tract.

With respect to the second contention, challenging the trial court's finding of

2

an easement by necessity, we conclude that no evidence supports a finding of present necessity. Express easements exist and benefit a portion of the tract, and the remainder of the tract is contiguous with the portion benefited by the express easements. Thus, we reverse the judgment granting an implied easement by necessity. We remand the case for entry of judgment consistent with this opinion and for further proceedings to address maintenance costs and attorney's fees.

## BACKGROUND

The Chambers own 32 acres near, but not touching, Space Center Boulevard (the "Chambers tract"). Adjoining the Chambers tract, and between the Chambers tract and Space Center Boulevard, is land owned by Clearpoint Crossing Property Owners Association and 11500 Space Center, LLC, and leased by Cullen's, LLC (the "Clearpoint tract"). The Chambers tract is landlocked, lacking direct access to a public road.

Exxon Mobil Corporation previously owned the Chambers tract. In November 2007, Exxon abandoned an earlier easement that gave the Chambers tract access across the Clearpoint tract, in exchange for the two express easements at issue in this case. In one easement, Clearpoint conveyed an easement across its land via a private road; in the other, 11500 Space Center conveyed an easement across a parking lot. Together, the two easements gave Exxon access from the Chambers tract to Space Center Boulevard. Both easements are perpetual, irrevocable, and run

3

with the land to benefit Exxon's successors and assigns. The easements state that their purpose was to give "free and uninterrupted pedestrian and vehicular ingress to and egress from" a parcel of the Chambers tract identified as "Drill Site BB," which they describe as a 7-acre tract within the larger 32-acre property. Exxon had owned Drill Site BB before acquiring the entire 32 acres.

The following diagram illustrates the general location of the properties relative to one another (though not to scale):



As the diagram shows, while the express easements state that they exist to provide access to Drill Site BB, that access is indirect, because Drill Site BB is on the opposite end of the Chambers tract from the Clearpoint tract and Drill Site BB's boundaries do not abut the Clearpoint tract.

After buying the Chambers tract, the Chambers began using the easements to clear the land in preparation for growing hay on 20 acres and for building air-conditioned storage units on another 5 acres. This lawsuit arose after Clearpoint opposed this use of the easements.

The parties tried their dispute to a jury. Clearpoint and 11500 Space Center contended that the express easements are limited in scope and grant the Chambers access to benefit Drill Site BB, not the entire tract, and for the sole purpose of furthering drilling activities. Clearpoint and 11500 Space Center also disputed whether the Chambers were entitled to an implied easement by necessity.

The Chambers countered that the express easements grant access to the entirety of their 32-acre property for any purpose. They also maintained that they were entitled to an easement by necessity granting an unqualified right of ingress and egress.

The jury found that the express easements granted a right of ingress and egress to benefit the entire Chambers tract. In addition, the jury made three predicate

5

findings in the Chambers's favor as to whether they had a necessity easement. Specifically, the jury found that:

- the Chambers tract was severed from the Clearpoint tract in May 2004;

- an easement across the Clearpoint tract at that time would have provided access from the Chambers tract to a public road; and

- the Chambers tract had no other access to a public road on that date.

Based on these findings, the jury further found that Clearpoint and 11500 Space Center were entitled to $15,000 and $25,000, respectively, for reimbursement for maintenance, improvement, and repair of the easements benefiting the Chambers tract. The jury found that both sides had incurred reasonable and necessary attorney's fees: it found that Clearpoint and 11500 Space Center had incurred $102,088.29 in fees in the trial court; the jury found that the Chambers incurred $55,000 in fees in the trial court and awarded $15,000 in the event of an appeal to the court of appeals and $20,000 should it be necessary to file a petition for review to the Supreme Court of Texas.

Based on the jury's verdict, the trial court rendered a judgment declaring that (1) the express easements give the Chambers an unqualified right of ingress and egress to and from their entire property, not just Drill Site BB; and (2) the Chambers have a necessity easement as an additional easement across the Clearpoint tract in the same location and for the same purpose as the express easements. It awarded

6

$15,000 to Clearpoint and $25,000 to 11500 Space Center in maintenance costs. It awarded the Chambers their attorney's fees.

## DISCUSSION

### I.    The Express Easements

Clearpoint and 11500 Space Center contend that the trial court erred in ruling that the express easements give the Chambers a right of ingress and egress to and from the entirety of their 32-acre property. Clearpoint and 11500 Space Center further contend that these express easements convey only the rights conferred by the earlier, abandoned easement. The earlier easement provided for access to the 7 acres comprising Drill Site BB and only for drilling-related activity.

#### A.    *Applicable law*

When an express easement is unambiguous, the trial court must interpret it as a matter of law, and we review a trial court's interpretation of an unambiguous easement de novo. *See DeWitt Cty. Elec. Co-op v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999); *CenterPoint Energy Houston Elec. v. Bluebonnet Dr.*, 264 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). An express easement is unambiguous when its language has a certain or definite meaning. *DeWitt Cty.*, 1 S.W.3d at 100. The mere fact that the parties disagree about the meaning of an express easement does not render the easement ambiguous. *Id.*

7

An easement does not convey title to property. *Stephen F. Austin Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007); *Brookshire Katy Drainage Dist. v. Lily Gardens*, 333 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Rather, it is a nonpossessory interest that allows its holder to use another's property for a stated purpose, in this instance, access to a public road. *See Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002); *Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 497 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). An easement that grants a right of ingress and egress, like the ones at issue, allows the holder to traverse another's land to access his own property. *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974).

We interpret an express easement using ordinary principles of contract interpretation. *Marcus Cable*, 90 S.W.3d at 700; *CenterPoint*, 264 S.W.3d at 388. We rely solely on the written terms of an easement to ascertain its scope, focusing on the terms of its granting language. *See Marcus Cable*, 90 S.W.3d at 700–01; *CenterPoint*, 264 S.W.3d at 388. Unless defined, we give these terms their plain, ordinary, generally accepted meaning. *Marcus Cable*, 90 S.W.3d at 701; *CenterPoint*, 264 S.W.3d at 388. So interpreted, an easement's express terms delineate the purposes for which it may be used. *Marcus Cable*, 90 S.W.3d at 701.

An easement does not grant any rights by implication unless those rights are reasonably necessary to enjoy the rights that the easement expressly grants. *Marcus*

8

*Cable*, 90 S.W.3d at 701; *CenterPoint*, 264 S.W.3d at 389. If the easement does not provide for a purpose, a use in the service of that purpose is not allowed. *See Marcus Cable*, 90 S.W.3d at 701–02; *CenterPoint*, 264 S.W.3d at 389.

**B.     Analysis**

The two November 2007 easements respectively provide:

> a 50-foot wide road access easement (the "Easement") on, over, under, across, along and through the land (hereinafter called the "Easement Area") being 25-feet wide on either side of the centerline as depicted and described in Exhibit "A" attached hereto and made a part hereof for the purpose (the "Easement Purpose") of providing Grantee, Grantee's invitees, and Grantee's successors and assigns, free and uninterrupted pedestrian and vehicular ingress to and egress from the property described in Exhibit "B" attached hereto and made a part hereof ("Drill Site BB");

> * * *

> a 50-foot wide road access easement (collectively, the "Easement") on, over, under, across, along and through the land (hereinafter called the "Easement Area") described in Exhibit "A" attached hereto and made a part hereof for the purpose (the "Easement Purpose") of constructing, maintaining, operating, repairing, and removing a road over the Easement Area in order to provide Grantee and Grantee's invitees, successors and assigns, free and uninterrupted pedestrian and vehicular ingress to and egress from the property described in Exhibit "B" attached hereto and made a part hereof ("Drill Site BB").

The language of these easements is plain: it provides the Chambers with the right to go across the Clearpoint tract "free and uninterrupted" to access Drill Site BB.

Contrary to Clearpoint and 11500 Space Center's contention, these easements do not limit the right of ingress and egress that runs with the Chambers tract to uses

9

associated with drilling-related activities. No language in the easements supports such a limitation. Clearpoint and 11500 Space Center rely on language from the earlier, abandoned easement for this limitation. The abandonment instrument, however, expressly states that two new easements would "replace" that earlier one. Accordingly, we reject Clearpoint and 11500 Space Center's reliance on the earlier easement to support a drilling-activity limitation on the right of access that benefits Drill Site BB.

But Clearpoint and 11500 Space Center are correct that the express easements grant access to and from Drill Site BB, not anywhere else on the 32-acre tract. Both easements say so, and Exhibit "B" to each easement specifically identifies Drill Site BB as a 7-acre parcel, not to include the much larger 32 acres comprising the whole of the Chambers tract. The right to exclude others is an essential attribute of real property ownership; thus, the law protects landowners who convey unambiguous easements by ensuring that the limited access afforded to others will not be interpreted as granting rights of ingress or egress broader than those easements. *See Marcus Cable*, 90 S.W.3d at 700, 702.

We therefore hold that the trial court erred in declaring that the express easements grant access to the entire Chambers tract. As a matter of law, unambiguous easements like these can only be used to access the land specified in the conveyance; they do not entitle the Chambers to directly access other parts of

their tract. *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979); *Holmstrom v. Lee*, 26 S.W.3d 526, 534 (Tex. App.—Austin 2000, no pet.); *Jordan v. Rash*, 745 S.W.2d 549, 553 (Tex. App.—Waco 1988, no writ).

The Chambers respond that the express easements are ambiguous and thus the jury properly decided their scope. The Chambers do not identify a particular ambiguity. The express easements are, perhaps, atypical in that the Clearpoint tract is not adjacent to Drill Site BB and the easements consequently grant access indirectly by way of a route through the Chambers tract. An access easement, however, need not adjoin the land that it serves. *See Forister v. Coleman*, 418 S.W.2d 550, 559–60 (Tex. Civ. App.—Austin 1967), *writ ref'd n.r.e.*, 431 S.W.2d 2 (Tex. 1968) (per curiam); *Heard v. Bowen*, 184 S.W. 234, 237–38 (Tex. Civ. App.—San Antonio 1916, writ ref'd); *see also Bains v. Parker*, 182 S.W.2d 397, 398–99 (Tex. 1944) (easement across servient estate to third-party's land, which in turn gave dominant estate access to roadway, held valid). Thus, this feature of the express easements does not render them ambiguous. Because the interpretation of easements' unambiguous language presents a question of law, the issue should not have been submitted to a jury; thus, we sustain the challenge to its verdict. *See DeWitt Cty.*, 1 S.W.3d at 100.

In sum, the express easements benefit only the portion of the Chambers tracts described as Drill Site BB. The easements grant unqualified access to that site, without regard for whether the access furthers drilling-related activities.

## II. The Implied Easement by Necessity

Clearpoint and 11500 Space Center contend that the trial court erred in ruling that the Chambers are entitled to a necessity easement across the same land burdened by the express easements. Clearpoint and 11500 Space Center challenge this ruling on several grounds, including that the Chambers did not adduce evidence showing that they presently lack a means of ingress and egress to and from the Chambers tract to a public road.

### A. Applicable law

To successfully establish an easement by necessity, the Chambers had to prove, among other things, that "the claimed access is a necessity and not a mere convenience." *Hamrick v. Ward*, 446 S.W.3d 377, 382 (Tex. 2014). This requires a showing of "strict necessity." *See id.* at 379, 382–85; *Union Pac. R.R. Co. v. Seber*, 477 S.W.3d 424, 431 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Under this standard, the Chambers bore the burden "to exclude, by proof, the possibility of another way of ingress and egress except the way claimed." *Duff v. Matthews*, 311 S.W.2d 637, 641 (Tex. 1958); *see also Sloan v. Hill*, No. 01-12-00045-CV, 2013 WL 816414, at *8 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, pet. denied) (mem.

op.) ("Necessity requires a showing that a grantee has 'no way' to access its land without the easement."). Thus, if the proof establishes that the Chambers have other means of accessing the Chambers tract, a necessity easement cannot exist as a matter of law. *See Alley v. Carleton*, 29 Tex. 74, 78 (1867) (stating that "if the owner of the land can use another way, he cannot claim by implication to pass over that of another to get to his own"); *Payne v. Edmonson*, 712 S.W.2d 793, 796 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (holding that implied easement couldn't have arisen as matter of law because another means allowed access to land).

## B.    Analysis

The express easements unambiguously grant part of the Chambers tract a right of ingress and egress across the Clearpoint tract, for the purpose of accessing Drill Site BB. Drill Site BB's northern and eastern boundaries, in turn, adjoin the remainder of the Chambers tract. Because the Chambers can access the remainder of their property from Drill Site BB, for which they have express easements across the Clearpoint tract to a public road, the Chambers cannot establish the strict necessity required for the law to imply an easement by necessity.

The Supreme Court of Texas's decision in *Duff v. Matthews* dictates this result. In *Duff*, Matthews sought a necessity easement to access his land by traveling across Duff's. 311 S.W.2d at 638. The record showed that every lot in the subdivision, including the plaintiff's land, was accessible by road. *Id.* at 638–40.

13

Matthews nonetheless sought a necessity easement on the basis that (1) the access road to his lot was impassible due to its disrepair; and (2) the impassible road could not provide him with access to the entirety of his land due to difficult terrain. *Id.* at 640. The Court rejected both contentions. *Id.* at 642–43. With respect to impassibility, Matthews's remedy was to repair the road. *See id.* at 643. As to the difficulty of the terrain, the Court held that a necessity easement cannot exist when a landowner can get to his property across his own land. *Id.* This is so because a landowner must have "no other way" to access his land to have an easement by necessity. *Id.*; *see also Sloan*, 2013 WL 816414, at *8.

The Chambers have access to the rest of the Chambers tract from Drill Site BB, which, in turn, is benefited by express easements granting access to a public road. The Chambers may traverse Drill Site BB to access the remainder of their property. That another route to the remainder of their property might be more convenient or practical is not a legally sufficient basis for imposing a necessity easement on other landowners. *See Hamrick*, 446 S.W.3d at 382; *Duff*, 311 S.W.2d at 640; *Alley*, 29 Tex. at 78. The Chambers existing access to the rest of the Chambers tract through Drill Site BB defeats the showing of present necessity that is required for an implied easement as a matter of law. *See Duff*, 311 S.W.2d at 643 (necessity easement "will not exist where a man can get to his property through his own land" regardless of how difficult that might be); *Payne*, 712 S.W.2d at 796

14

(necessity easement barred as matter of law where record showed that alternative route existed on plaintiff's own land despite evidence that alternative route would be costly, narrow, and hazardous).

We hold that the trial court erred in submitting the issue of a necessity easement to the jury, given the express easements provide access to Drill Site BB and from thence to the remainder of the Chambers tract. We therefore sustain Clearpoint and 11500 Space Center's second issue.

## III. Maintenance Costs and Attorney's Fees

The jury found that $15,000 and $25,000 would fairly and reasonably compensate Clearpoint and 11500 Space Center, respectively, for the Chambers's share of the costs to maintain, improve, or repair the private-road and parking-lot easements. The jury's assessment of fair and reasonable compensation, however, was necessarily based to an extent on its understanding of the actual use of the private road and parking lot that the Chambers were legally entitled to make under the express easements. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.13 cmt. d (2000) (when owners of dominant and servient estates jointly use land subject to easement, "the frequency and intensity of use made by each" should be taken into account in allocating maintenance costs); *see, e.g.*, *Gold Coast Neighborhood Ass'n v. State*, 403 P.3d 214, 237 (Haw. 2017) (landowners jointly responsible for repair of land subject to easement "in accordance with equitable

15

considerations relating to their relative use, enjoyment, and contributions"); *Bina v. Bina*, 239 N.W. 68, 71 (Iowa 1931) (landowner who used private road on his land that was subject to easement less than landowner benefited by easement "should bear a correspondingly lower proportion of the repair burden"). Likewise, the trial court's decision to award attorney's fees was based on the Chambers' prevailing position in the trial court. Because we reverse the trial court's judgment, we reverse these awards and remand these issues for further proceedings.

## CONCLUSION

We reverse the judgment of the trial court declaring that the November 2007 easements benefit the entire Chambers tract. We remand the case to the trial court for entry of judgment declaring that the express easements grant the Chambers tract a right of ingress and egress to and from Drill Site BB, with access not limited to uses related to drilling activity. Because Drill Site BB is contiguous to the remainder of the Chambers tract and Drill Site BB is benefitted by easements granting access to a public road, we reverse the judgment declaring an easement by necessity. We remand the case to the trial court for further proceedings on the issues of maintenance costs and attorney's fees.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.

16