Opinion issued June 11, 2009







 

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00260-CV






D & KW FAMILY, L.P., Appellant


V.


KIMBERLY KAY BIDINGER AND ALFREDO ARTURO BALLESTAS,
Appellees






On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 2007-12774






MEMORANDUM OPINION


 This summary-judgment case involves access to property owned by appellees,
Kimberly Kay Bidinger and Alfredo Arturo Ballestas. Appellant, D & KW Family,
L.P. (D&KW) sued Bidinger and Ballestas for trespass and sought to enjoin their
accessing D&KW's property via Cherilyn Lane, which D&KW contends it owns. 
The trial court rendered a traditional summary judgment in favor of Bidinger and
Ballestas, expressly ruling that "any title" established by DK&W "is subject to the
Bidinger and Ballestas easement by necessity" over Cherilyn Lane. D&KW contends
on appeal that its 2003 title defeats the implied easement by necessity in favor of
Bidinger and Ballestas as a matter of law. In support of that single issue, D&KW
further contends that the claims of Bidinger and Ballestas are time-barred and that the
deed by which D&KW acquired its title sufficiently identifies the D&KW property. 
We affirm. 

BACKGROUND


 Both parties own property in an unrecorded subdivison of approximately 50
acres once known as Aldine City. The original owner was Mildred O. Stoerner, as
trustee for a blind trust that contemplated dedicating and granting easements and
rights-of-ay as necessary to develop the subdivision. Early on, the trust deeded
rights-of-way to install gas lines in the subdivision. 

 In October 1968, Stoerner, trustee, and William E. Biswell conveyed the trust's
interest in the entire 50-acre tract to Aldine Mobile Home City, which later became
known as Ranch Town, Inc. The subdivision consists of about 50 acres and is south
of and accessible only from Aldine Bender Road in Harris County. Access within the
subdivision is by Cherilyn Lane. Aldine Mobile Home City deeded rights-of-way to
Houston Lighting and Power for electric service in 1971, and in 1981 Houston Cable
TV obtained an exclusive right to install and maintain a community television system
for the mobile home park.

A. The Bidinger and Ballestas Property

 On February 4, 1975, when it was still known as Aldine Mobile Home City, the
subdivision granted Margaret S. Lewis a security interest in two portions of the 50-acre tract. Lewis became the sole owner by trustee's deed dated February 6, 1979. 
The deed to Lewis contains no express easement to use Cherilyn Lane. Bidinger and
Ballestas, wife and husband, respectively, purchased one of those two properties on
January 23, 2007 at a trustee sale. Their property consists of 1.5312 acres and a
residence and is identified as 14107 Cherilyn Lane, Houston, Texas 77032. The
property is further identified as "Block 13 of Aldine City Mobile Homes Park City
out of the M.O. Stoerner 50 acres as recorded in Volume 7374, page 177 of the Harris
County Deed Records." 

 It is undisputed that BLOCK 13 is accessible only by Cherilyn Lane and that
Bidinger and Ballestas, like Lewis, obtained title without a grant of express easement
to access BLOCK 13 by Cherilyn Lane. (1) The earnest-money contract to purchase
BLOCK 13 contains an acknowledgment by Bidinger and Ballestas of "lack of legal
access" to the property. In their counterclaim seeking an easement, Bidinger and
Ballestas explain that they were ultimately able to close on the purchase after
presenting research showing that D&KW "did not in fact 'own [Cherilyn Lane]'" to
their mortgage and title companies. Before closing, Bidinger and Ballestas presented
a proposed easement to D&KW for endorsement, but without success. D&KW then
issued "do not trespass" notices to Bidinger and Ballestas and posted "no trespassing"
signs. (2) 

B. The D&KW Property (3)

 D&KW owns land adjacent to BLOCK 13. D&KW contends that its
ownership rights encompass the Cherilyn Lane right-of-way by which Bidinger and
Ballestas access BLOCK 13. D&KW further contend that Bidinger and Ballestas
trespass on D&KW property when they use Cherilyn Lane to access BLOCK 13. 

 We refer to the D&KW property as BLOCK 9. In 1994, Aldine Independent
School District (AISD) sued Ranch Town, Inc. to recover taxes that had been unpaid
since as early as 1974 on Lots 139-142, BLOCK 9, and on the right-of-way adjacent
to Blocks 5 to 9. AISD's petition described the property as follows

 LOTS ONE HUNDRED THIRTY-NINE (139) THROUGH ONE
HUNDRED FORTY-TWO (142), BLOCK NINE (9) ALDINE
MOBILE HOME CITY[,] AN UNRECORDED SUBDIVISION IN
HARRIS COUNTY, TEXAS, OUT OF THE EAST FIFTY (50)
ACRES, MORE OR LESS, AND ALL RIGHTS OF WAY WITHIN
SUCH FIFTY (50) ACRES, IN THE JOSEPH MCGINNIS SURVEY,
ABSTRACT 587, SAVE AND EXCEPT THAT PART OF THE FIFTY
(50) ACRES CONVEYED TO THE STATE OF TEXAS, AND BEING
MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS
IN ATTACHED EXHIBIT "B" AND SAVE AND ACCEPT THOSE
PROPERTIES PREVIOUSLY CONVEYED AND DESCRIBED IN
DEEDS RECORDED AS FILM CODE NUMBERS XXX-XX-XXXX, XXX-XX-XXXX, XXX-XX-XXXX, XXX-XX-XXXX, XXX-XX-XXXX, XXX-XX-XXXX, AND
XXX-XX-XXXX, IN THE DEED RECORDS OF HARRIS COUNTY,
TEXAS, SAID LOTS BEING SHOWN FOR REFERENCE PURPOSES
ONLY ON THE PLAT ATTACHED AS EXHIBIT "C." (4)


[Emphasis added.]


 On November 29, 1994, AISD and Ranch Town entered into an agreed
judgment of $26,434.45 for the past-due taxes, to which was attached a recorded
metes and bounds description of the entire 50-acre site and two unrecorded plat maps. 
Both plats show Cherilyn Lane, which is the right-of-way at issue in this proceeding,
in addition to other named rights of way that divert from Cherilyn Lane. When Ranch
Town did not pay the $26,434.45 judgment, AISD foreclosed and purchased the
property at the foreclosure sale. The deed under order of this sale purported to
convey the same property, lots 139 through 142, BLOCK 9, "and all rights of way
within such fifty (50) acres," with the same description quoted above from the AISD
petition and an attachment gave the same recorded metes and bounds description.
This deed was recorded on December 19, 1995. 

 On August 5, 2003, D&KW purchased lots 139 through 142, BLOCK 9, "and
all rights of way within such fifty (50) acres," at a tax resale conducted by a Harris
County Constable pursuant to section 34.05 of the Tax Code. Tex. Tax Code Ann.
§ 34.05 (Vernon 2008) (Resale by Taxing Unit). The August 5, 2003 deed described
BLOCK 9 in the same language as the AISD petition quoted above, except that (1)
the metes and bounds description is Exhibit A, rather than B, and (2) there is no
reference to a plat.

 The metes and bounds attachment described the land conveyed somewhat
differently than the deed, as

 [t]he East 50 acres of a tract of land containing 97.23 acres, more or less,
in the Joseph McGinnis Survey, Abstract 587 in Harris County, being
out of a part of a 270 acre tract conveyed to A.A. Koinm by deed
recorded in Volume 42, page 101, Deed Records of Harris County,
Texas, as vested in Louise Koinm Spence by partition deed recorded in
Volume 1338, page 99, Deed Records, Harris County, Texas, said
subject tract being the East 50 acres of said 97.23 acres, SAVE AND
EXCEPT that part of the said 50 acres as conveyed to the State of Texas,
by deed recorded in Volume 4374, page 306, Deed Records, and filed
for record under file number 695353, in the records of Harris County,
Texas, said subject tract being more particularly described by metes and
bounds . . . . 


 A ten-paragraph metes and bounds description of the "said subject tract"
followed this description, but nothing in the description refers to rights-of-way. 
Necessarily, then, there is no metes and bounds description of any rights-of-way. As
with the earlier conveyances, there is no metes and bounds description of lots 139
through 142, BLOCK 9. Rather, the metes and bounds description refers to and
identifies the east 50 acres of the Joseph McGinnis survey.

C. This Lawsuit

 D&KW sued Bidinger and Ballestas, claiming that the 2003 deed by which
D&KW acquired BLOCK 9 granted title to "all rights of way" and therefore to
Cherilyn Lane and that Bidinger and Ballestas commit trespass when they access their
property by using Cherilyn Lane. Bidinger and Ballestas counterclaimed, seeking an
implied easement as necessary to access their property. This request for relief
triggered a claim of implied easement and easement by necessity. Bidinger and
Ballestas also sought damages for intentional infliction of emotional distress and
tortious interference with the business relationships of Bidinger, an attorney. D&KW
challenge the summary judgment rendered in favor of Bidinger and Ballestas on their
easement-by-necessity claim, which the trial court resolved on cross-motions for
traditional summary judgment. (5)


 STANDARD OF REVIEW


 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Like the trial court, we must indulge every
reasonable inference in favor of the nonmovant, take all evidence favorable to the
nonmovant as true, and resolve any doubts in favor of the nonmovant. Id. We review
the evidence presented by the summary judgment record in the light most favorable
to the party against whom the summary judgment was rendered, crediting evidence
favorable to that party if reasonable jurors could, and disregarding contrary evidence
unless reasonable jurors could not. See City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). A party who moves for traditional summary judgment based on rule
166a(c), as here, must establish that no genuine issue of material fact exists and that
judgment should be rendered in favor of the movant as a matter of law. Tex. R. Civ.
P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d
746, 748 (Tex. 1999). The party with the burden of proof who seeks summary
judgment must either establish each element of its claim or defense as a matter of law,
or negate an element of a claim or defense of the opposing party as a matter of law. 
Tex. R. Civ. P. 166a(a)-(b) (comment). 

 When, as here, both parties file motions for summary judgment, and the trial
court grants one motion and denies the other, we determine all presented questions
and may render a different judgment if appropriate. SAS Institute, Inc. v. Breitenfeld,
167 S.W.3d 840, 841 (Tex. 2005); CU Lloyd's v. Feldman, 977 S.W.2d 568, 569
(Tex. 1998). When a motion for summary judgment raises multiple grounds, we may
affirm if a ground is meritorious, even if the trial court did not rule on that ground. 
See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996). We will
affirm the judgment if any one of the theories advanced in the motion is meritorious. 
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004). 

DISCUSSION


 D&KW's single issue challenges the summary judgment on the broad ground
that an implied easement by necessity cannot defeat the "good and perfect title" that
D&KW obtained to BLOCK 9 in 2003, because (1) the Tax Code recognizes only
recorded easements and because (2) limitations bars Bidinger's and Ballestas's claim
for an easement. See Tex. Tax Code Ann. § 34.01(n), 33.54(a) (Vernon 2008). We
first address whether Bidinger and Ballestas established an easement by necessity. A. Implied Easement by Necessity

 As in the trial court, D&KW contend that Bidinger and Ballestas are
trespassers when they access BLOCK 13 by Cherilyn Lane. On that basis, D&KW
argued that BLOCK 13 is "landlocked" and without legal access. In response,
Bidinger and Ballestas sought an implied easement as necessary and thus relied on
the two following theories in contending that they were entitled to an easement: (1)
they had access to their property by implied easement and (2) an easement to access
their property arose by necessity. They two theories of easement are similar and have
some overlapping elements.

 Easements by necessity arise by implication and are therefore classified as
implied, rather than express. See Othen v. Rosier, 226 S.W.2d 622, 626 (Tex. 1950)
(stating that easement by necessity "necessarily can arise only from an implied grant
or implied reservation"); Ward v. Bledsoe, 105 S.W.2d 1116, 1117 (Tex. Civ.
App.--Waco 1937, no writ) ("A way of necessity does not arise merely because of
inconvenience. It is dependent upon an implied grant or reservation . . . ."); Jordan
v. Rash, 745 S.W.2d 549, 553 (Tex. App.--Waco 1988, no writ) ("An easement of
necessity can only arise between a grantor and grantee through an implied grant or
reservation."). 

 To prevail on their claim to an easement by necessity, Bidinger and Ballestas
had the burden to establish all elements of that claim. See Duff v. Matthews, 311
S.W.2d 637, 640 (Tex. 1958); Crone v. Brumley, 219 S.W.3d 65, 68 (Tex. App.--San
Antonio 2006, pet. denied) (stating that party seeking easement has burden of proof). 
To establish an easement by necessity, a landowner must establish (1) unity of
ownership before severance of the estates concerned, (2) that access is a necessity and
not a mere convenience, and (3) the necessity existed at the time of severance of the
two estates. See Koonce v. Brite Estate, 663 S.W.2d 451, 452 (Tex. 1984); Crone,
219 S.W.3d at 68; Mack v. Landry, 22 S.W.3d 524, 531 (Tex. App.--Houston [14th
Dist.] 2000, no pet.). 

 To establish an implied easement, a party must show (1) unity of ownership
between the dominant and servient estates at the time of severance, (2) apparent use
of the easement at the time of the grant, (3) continuous use of the easement before the
severance of the dominant and servient estates, and (4) that the easement is
reasonably necessary to the use and enjoyment of the dominant estate. Houston
Bellaire, Ltd. v. TCP LB Portfolio I, L.P., 981 S.W.2d 916, 919 (Tex. App.--Houston
[1st Dist.] 1998, no pet.). 

 For easements by necessity and implied easements, therefore, a party must
show unity of ownership between the dominant and servient estates at the time of
severance, and that the easement is reasonably necessary to the use and enjoyment of
the dominant estate. See Koonce, 663 S.W.2d at 452; Houston Bellaire, Ltd., 981
S.W.2d at 919. 

 It is undisputed that the dominant estate in this case is Bidinger's and
Ballestas's BLOCK 13, which benefits from the easement rendered by the trial court,
and that the servient estate is D&KW's BLOCK 9, on which the trial court imposed
the easement on "any title" that D&KW possessed. See Drye v. Eagle Rock Ranch,
Inc., 364 S.W.2d 196, 207 (Tex. 1963); LaTaste Enters. v. City of Addison, 115
S.W.3d 730, 735 (Tex. App.--Dallas 2003, pet. denied). 

 1. Unity of Ownership

 Bidinger and Ballestas contend that they established the common element of
unity of ownership between their property, BLOCK 13, the dominant estate for the
easement they obtained, and D&KW's BLOCK 9, the servient estate, because there
was but a single owner of the entire 50-acre tract until Lewis became the owner of
BLOCK 13 in 1979. We agree. 

 The summary-judgment record contains an abstract of title for the 50-acre
subdivision. The abstract shows that Aldine Mobile Home City, Inc. owned the 50-acre tract until it transferred BLOCK 9 and another block to Margaret S. Lewis by the
trustee deed of February 6, 1979. Until February 6, 1979, there had been no
severance from the original 50-acre tract. The property that D&KW acquired in 2003
was not severed until the December 19, 1995 transfer to AISD. We hold that
Bidinger and Ballestas established the requisite unity of ownership before severance,
for purposes of both an easement-by-necessity and an implied easement. See Koonce,
663 S.W.2d at 452; Houston Bellaire, Ltd., 981 S.W.2d at 919. 

 2. Reasonable Necessity

 We also agree with Bidinger's and Ballestas's contention that they established
the common element of necessity. The degree of necessity required to establish
implied easement depends on whether the easement arises by implied reservation or
by implied grant. See Houston Bellaire, Ltd., 981 S.W.2d at 921 (citing Mitchell v.
Castellaw, 246 S.W.2d 163, 168 (Tex. 1952) (implied reservation); Howell v. Estes,
12 S.W. 62, 63 (Tex. 1888) (implied grant)). A party claiming implied easement by
grant must establish reasonable necessity, in contrast to a party claiming easement by
reservation, who must establish strict necessity. See id. 

 In this case, as in Houston Bellaire, Ltd., the relevant degree of necessity is
reasonable necessity for "use and enjoyment of the dominant estate," specifically,
Bidinger's and Ballestas's BLOCK 13, because any implied easement would arise out
of a grant without a reservation by the original grantor. Compare id. at 921 (rejecting
strict necessity standard in case of easement premised on implied grant) (citing
Howell v. Estes, 12 S.W. at 63), with Payne v. Edmonson, 712 S.W.2d 793, 796 (Tex.
App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.) (imposing strict necessity in case
of easement premised on implied reservation). Necessity requires a showing that a
grantee has "no way" to access its land without the easement. See Duff, 311 S.W.2d
at 642-43; Payne, 712 S.W.2d at 796. 

 It is undisputed that Bidinger and Ballestas have "no way," see Duff, 311
S.W.2d at 642-43, into or out of their property, BLOCK 13, except by Cherilyn Lane. 
The evidence also establishes that Cherilyn Lane is the only exit from the 50-acre
tract onto Aldine-Bender Road and the only access to the 50-acre tract from Aldine-Bender Road. D&KW do not contend and have not proven otherwise. 

 Under the record presented, there was never a question of mere convenience.
E.g., Koonce, 663 S.W.2d at 452. Likewise, there was never a question of access, see
id., until D&KW declared that Bidinger and Ballestas were "trespassers" who had
purchased "landlocked" property. We hold, therefore, that Bidinger and Ballestas
established that the easement declared by the trial court was reasonably necessary as
a matter of law, both that they might access their property, BLOCK 13, for purposes
of easement-by-necessity, see id., and that they might use and enjoy BLOCK 13, for
purposes of implied easement. See Houston Bellaire, Ltd., 981 S.W.2d at 921 (citing
Howell, 12 S.W. at 63). 

 3. Access Preceded Severance 

 We further hold that Bidinger and Ballestas established as a matter of law that
access to BLOCK 13 by Cherilyn Lane existed before the February 6, 1979 deed to
Margaret L. Lewis severed BLOCK 13 from the 50-acre tract. See Koonce, 663
S.W.2d at 452; Crone, 219 S.W.3d at 68. Even before the transfer to Lewis, the trust
that owned the 50-acre site contemplated dedicating and granting easements and
rights-of-way as necessary to develop the subdivision. In keeping with this
dedication, the trust deeded rights-of-way to install gas lines in the subdivision, and
electrical utilities easements have existed since 1971. The summary-judgment
evidence, including the abstract on which D&KW relied, refers to a "proposed
Cherilyn Lane" for the subdivision in a deed recorded in 1969. 


 4. Apparent and Continuous Use at Severance 

 For purposes of the requisite proof for implied easement, the same evidence
establishes, as a matter of law, both apparent and continuous use of Cherilyn Lane,
at the time of the February 6, 1979 severance, to access BLOCK 13. See Houston
Bellaire, Ltd., 981 S.W.2d at 921; see also Machala v. Weems, 56 S.W.3d 748, 755
(Tex. App.--Texarkana 2001, no pet.); Richter v. Hickman, 243 S.W.2d 466, 468
(Tex. Civ. App.--Galveston 1951, no writ) (holding that grant of land from grantor
estate to estate within grantor's estate presumes grant of right-of-way through land
of grantor to arrive at land purchased by grantee); Grobe v. Ottmers, 224 S.W.2d 487,
489 (Tex. Civ. App.--San Antonio 1949, writ ref'd n.r.e.) (holding further that
"failure to grant a passageway was an oversight and will be implied in the grant"). 

 Having established the elements of an implied easement of necessity by their
motion for summary judgment and the pooled summary-judgment evidence of both
movants for summary judgment, see SAS Institute, Inc., 167 S.W.3d at 841, Bidinger
and Ballestas met their burden to conclusively establish an implied easement by
necessity to use Cherilyn Lane to access their property located at BLOCK 13. See
Duff, 311 S.W.2d at 640; Crone, 219 S.W.3d at 68. 

B. D&KW's Claimed Title to Cherilyn Road

 D&KW contend that they conclusively established "good and perfect title" to
both BLOCK 9 and the Cherilyn Lane right-of-way because the 2003 purchase was
at a tax sale. D&KW relies on Article 8, section 13(b) of the Texas Constitution and
section 34.01(n) of the Tax Code. See Tex. Const. art. VIII, § 13(b) (stating that
deed to purchaser of property sold for unpaid taxes "shall be held to vest a good and
perfect title in the purchaser thereof"); Tex. Prop. Code Ann. § 34.01(n) (Vernon
2008) ("The deed vests good and perfect title in the purchaser . . . ."). As the
interpretive commentary to Article 8, section 13(b) states, Texas law permits
"numerous attacks" on title obtained by a tax sale, and the means of defeating title
obtained by a tax sale "are not by any means remote." See Tex. Const. art. VIII, §
13(b) (interpretive commentary). 

 D&KW further contends that an implied easement by necessity cannot defeat
the title D&KW obtained by the tax sale, because section 34.01(n) of the Tax Code
recognizes only recorded easement exceptions to the "good and perfect title" that
results from a tax sale, (6) and that limitations bars the challenge represented by
Bidinger's and Ballestas's unrecorded easement-by-necessity. See Tex. Prop. Code
Ann. §§ 34.01(n), 34.05(f) (Vernon 2008). These contentions are irrelevant,
however, unless D&KW is correct in its claim of good and perfect title to the
Cherilyn Land right-of-way. See id. § 34.01(n) ("The deed vests good and perfect
title in the purchaser or the purchaser's assigns to the interest owned by the defendant
in the property subject to the foreclosure . . . ."). 

 Bidinger and Ballestas contend that D&KW's claim to superior title required
D&KW to meet its burden as movant in an action for trespass-to-try-title. See Tex.
Prop. Code Ann. § 22.001(a) (Vernon 2008); Tex. R. Civ. P. 783; Rogers v. Ricane
Enters., Inc., 884 S.W.2d 763, 768 (Tex. 1994). We agree. 

 An action for trespass-to-try-title permits resolution of claims to title or the
right of possession. Rogers, 884 S.W.2d at 768. To recover, the claimant must
recover on the strength of its own title and cannot rely on any weakness of the
defendant's title. Id.; Diversified, Inc. v. Hall, 23 S.W.3d 403, 406 (Tex.
App.--Houston [1st Dist.] 2000, pet. denied). The claimant has four permissible
means by which to establish superior title, specifically, by showing (1) title emanating
from the sovereignty of the soil, (2) a superior title in itself emanating from a
common source, (3) title by adverse possession, or (4) title by earlier possession
coupled with proof that possession has not been abandoned. Rogers, 884 S.W.2d at
768; Diversified, Inc., 23 S.W.3d at 406. The claimant, here D&KW, has the initial
burdens to identify the property to which it claims title and to establish its location. 
Jones v. Mid-State Homes, Inc., 356 S.W.2d 923. 925 (Tex. 1962). Bidinger and
Ballestas pleaded "not guilty" to D&KW's claims of superior title. See Tex. R. Civ.
P. 788. Accordingly, the burden of proof remained with D&KW to identify and
establish its ownership rights to the Cherilyn Lane right-of-way. See Cox v. Olivard,
482 S.W.2d 682, 685 (Tex. Civ. App.--Dallas 1972, writ ref'd n.r.e.). 

 D&KW defend their claim of title to BLOCK 9 and Cherilyn Lane because the
deed by the constable conveyed lots 139 through 142, BLOCK 9, "and all rights of
way within such fifty (50) acres" and thus tracked the tax deed recorded on December
19, 1995 by which AISD foreclosed on the property, which, in turn, tracked AISD's
petition in the tax case. The pertinent language from the predecessor deed describes
the property that D&KW acquired as 

 LOTS ONE HUNDRED THIRTY-NINE (139) THROUGH ONE
HUNDRED FORTY-TWO (142), BLOCK NINE (9) ALDINE
MOBILE HOME CITY[,] AN UNRECORDED SUBDIVISION IN
HARRIS COUNTY, TEXAS, OUT OF THE EAST FIFTY (50)
ACRES, MORE OR LESS, AND ALL RIGHTS OF WAY WITHIN
SUCH FIFTY (50) ACRES . . . .


(Emphasis added.) 

 However, the metes and bounds description, attached as Exhibit A to the
constable's deed to D&KW describes the land as

 The East 50 acres of a tract of land containing 97.23 acres, more or less,
in the Joseph McGinnis Survey, Abstract 587 in Harris County, being
out of a part of a 270 acre tract conveyed to A.A. Koinm by deed
recorded in Volume 42, page 101, Deed Records of Harris County,
Texas, as vested in Louise Koinm Spence by partition deed recorded in
Volume 1338, page 99, Deed Records, Harris County, Texas, said
subject tract being the East 50 acres of said 97.23 acres, SAVE AND
EXCEPT that part of the said 50 acres as conveyed to the State of Texas,
by deed recorded in Volume 4374, page 306, Deed Records, and filed
for record under file number 695353, in the records of Harris County,
Texas, said subject tract being more particularly described by metes and
bounds . . . . 

 

Nothing in this description refers to rights-of-way. Though a ten-paragraph metes
and bounds description of the "said subject tract" followed this description, the metes
and bounds description does not describe any rights-of-way. Instead, the metes and
bounds description refers to and identifies only the east 50 acres of the Joseph
McGinnis survey that constituted the 50-acre unrecorded subdivision. As with the
earlier conveyances, there is no metes and bounds description of lots 139 through
142, BLOCK 9. 

 A valid conveyance of real property must contain a sufficient description of the
property to be conveyed. AIC Management v. Crews, 246 S.W.3d 640, 645 (Tex.
2008). The sufficiency of the description may be determined by examining whether
the written instrument conveying title furnishes "within itself, or by reference to some
other existing writing, the means or data" by which the land conveyed may be
identified "with reasonable certainty." See id. (citing Broaddus v. Grout, 258 S.W.2d
308, 309 (Tex. 1953); Pickett v. Bishop, 223 S.W.2d 222, 224 (Tex. 1949); Smith v.
Sorelle, 87 S.W.2d 703, 705 (Tex. 1935)); Morrow v. Shotwell, 477 S.W.2d 538, 539
(Tex. 1972); Greer v. Greer, 191 S.W.2d 848, 849 (Tex. 1966). 

 Whether conveyed voluntarily or involuntarily, as by foreclosure of a tax lien,
a sufficient description "must allow an individual to locate the conveyed property
with reasonable certainty." See Crews, 246 S.W.3d at 645 (rejecting heightened
scrutiny for "descriptions contained in constables' or sheriffs' deeds made by virtue
of execution sales"). In the case of a tax judgment, the description of the property
conveyed "must be sufficiently particular to allow a party to locate the specific land
being identified." Id. (citing Manges v. Freer Indep. Sch. Dist., 728 S.W.2d 842, 843
(Tex. App.--San Antonio 1987, writ ref'd n.r.e.)); see also Reiland v. Patrick Thomas
Props., Inc., 213 S.W.3d 431, 437 (Tex. App.--Houston [1st Dist.] 2006, pet. denied)
(stating that description must provide sufficient information to determine size, shape,
and boundaries of conveyed tract). The parties may not resort to extrinsic evidence
to supply identifying information, which must derive either from the deed itself or
from an existing writing referred to in the deed. Id. at 648 (emphasis in original)
(distinguishing Morrow, 477 S.W.2d at 539, in which parties could identify property,
but deed referred to "a nonexistent survey to be conducted in the future"). 
 The grant of "all rights of way" within the 50-acre tract is legally insufficient
to confer fee simple title to Cherilyn Lane for several reasons. (7) Within the deed itself,
there is a purported grant of all rights-of-way, but the metes and bounds description
attached to the deed does not refer to any right-of-way. The written instrument that
purports to convey title does not, therefore, furnish "within itself, or by reference to
some other existing writing, the means or data" by which the land conveyed may be
identified "with reasonable certainty." See Crews, 246 S.W.3d at 645. The
conveyance of "all rights of way" fails because of a lack of metes and bounds
description or any other existing writing from which to determine the location, size,
and boundaries of the rights of way with the requisite reasonable certainty. See
Crews, 246 S.W.3d at 645; Reiland, 213 S.W.3d at 437. 

 Further, the language of conveyance of "all rights of way" by the constable's
deed in this case is much like a conveyance of an unidentified portion of a larger,
identifiable tract, which the Supreme Court of Texas has "long held" to be
insufficient. See Tex. Builders v. Keller, 928 S.W.2d 479, 482 (Tex. 1996)
(supporting string citation omitted). 

 Finally, the constable's deed does not provide any means by which a surveyor
could locate and determine the rights-of-way. See Crews, 246 S.W.3d at 645. 
Indeed, Bidinger's and Ballestas's summary-judgment evidence includes the affidavit
of a professional surveyor who attested to his inability to rely on the descriptions
provided by the constable's deed and supporting exhibit to aid in determining the
property conveyed. D&KW responded by providing the affidavit of another
professional surveyor who stated that he was able to determine the metes and bounds
of the Cherilyn Lane right-of-way by referring to the tax plats in the Assessor's Block
Book for Harris County. To be competent, evidence relied on to locate, size, and
determine boundaries must refer to "existing writings such as tax tract maps." See
Crews, 246 S.W.3d at 648 (emphasis added) (recognizing reliance on tax plat because
language in deed referred explicitly to existing tax tract maps in Harris County). The
critical distinction here is the lack of an "existing writing" that refers to the tax plat. 
See id. In this case, there is only the opinion of D&KW's professional surveyor that
refers to the tax plat.

 We hold, therefore, under the summary-judgment record presented, that the
constable's deed by which D&KW contends it acquired the Cherilyn Lane right-of-way does not sufficiently describe that property to the extent that use of the right-of-way by Bidinger and Ballestas constitutes a trespass. Accordingly, the trial court
properly rendered summary judgment on the ground that "any title" D&KW acquired 
"is subject to the Bidinger and Ballestas easement by necessity" over Cherilyn Lane. 
We further hold that the trial court properly denied D&KW's traditional motion for
summary judgment regarding title. Having reached these determinations, we need not
address D&KW's remaining contentions. 

 We overrule D&KW's sole issue.



CONCLUSION


 We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.

1. The summary-judgment record shows that this is true for other residents of the
subdivision.
2. The summary-judgment evidence shows that a gate had been constructed on Cherilyn
Lane, that it had been open previously, but was locked to prevent access by Bidinger
and Ballestas. One neighbor had been given a key. 
3. D&KW own approximately 32 of the 50 acres of the subdivision. This lawsuit
concerns only the land known as lots 139 through 142, or BLOCK 9, of the
subdivision. 
4. Exhibit A to the petition was a compilation of the tax delinquencies for each lot.
5. In moving for summary judgment, Bidinger and Ballestas also relied on alternative
grounds to support their easement claim. The trial court rendered a no-evidence
summary judgment in favor of D&KW on Bidinger's and Ballestas's counterclaims
of intentional infliction of emotional distress and tortious interference with business
relationships. Bidinger and Ballestas have not appealed that portion of the trial
court's final judgment.
6. The deed vests good and perfect title in the purchaser or the purchaser's
assigns to the interest owned by the defendant in the property subject
to the foreclosure, including the defendant's right to the use and
possession of the property, subject only to the defendant's right of
redemption, the terms of a recorded restrictive covenant running with
the land that was recorded before January 1 of the year in which the tax
lien on the property arose, a recorded lien that arose under that
restrictive covenant that was not extinguished in the judgment
foreclosing the tax lien, and each valid easement of record as of the
date of the sale that was recorded before January 1 of the year the tax
lien arose. The deed may be impeached only for fraud. 


 Tex. Tax Code Ann. § 34.01(n) (Vernon 2008) (emphasis added).
7. We address only the trespass alleged by DK&W, specifically, access to Bidinger's and
Ballestas's BLOCK 13. Accordingly, we need not decide and express no opinion on
the validity of DK&W's title to BLOCK 9.